**NORTHEAST LIQUORS, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD,**
Respondent,
and
**McDonald's Liquors, Inc., Intervenor.**

No. 6276.

District of Columbia Court of Appeals.

Argued Oct. 25, 1972.

Decided March 29, 1973.

J. E. Bindeman, Washington, D. C., with whom Leonard W. Burka, Washington, D. C., was on the brief, for petitioner.

E. Calvin Golumbic, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst.

Corp. Counsel, were on the brief, for respondent.

Samuel B. Block and Theodore Kligman, Washington, D. C., for intervenor.

Before KELLY, FICKLING and KERN, Associate Judges.

KELLY, Associate Judge:

In December of 1971, McDonald's Liquors, Inc. applied to the District of Columbia Alcoholic Beverage Control Board for a transfer of its Retail Class "A" liquor license from 300 New York Avenue, N.W. to a new location in the District of Columbia Farmers Market at 1309 Fifth Street, N.E. Northeast Liquors, Inc. opposed the application on the ground, *inter alia,* that since the main entrance of the Farmers Market was within 400 feet of the main entrance of the Hamilton Recreation Center, a District of Columbia facility across the street from the market, the Board was barred from granting the application by the pertinent provisions of 3 D.C. Rules and Regulations 2.2.[1]

At a hearing on January 12, 1972, it was adduced that there are two entrances to the recreation center. Arthur Kremelmeyer, at that time Administration Recreation Assistant for the District of Columbia Department of Recreation, testified that entrance A, the southern gate, is most heavily used because it "is nearest to the location where most of our patronage comes from, south of Florida Avenue", and that "most of the traffic does cross the ground for some reason or other."[2] On cross-examination, however, he stated that the largest number of users of the center were students of Hamilton Junior High School, located directly north of the center, and during lunch hours, recess, or at the close of school, they would be most likely to use entrance B, located closer to the school building. He also felt that adults attending lectures, concerts and other recreational programs at night would ordinarily use entrance B because of its proximity to parking areas.

All parties conceded that entrance A was less than 400 feet from the main market entrance. As to entrance B, there was some dispute. One witness, testifying on behalf of Northeast, stated that according to his measurements entrance B was only 390 feet from the market, while an officer of McDonald's testified that his measurements showed the distance to be in excess of 400 feet.

Five days after the hearing, in the absence of the parties or their counsel, members of the Board made a personal inspection of the premises and had measurements taken. Subsequently, the Board, "[h]aving considered the testimony and inspected the premises personally",[3] found that entrance B was the main street entrance to the recreation center and that it was 419 feet from the main street entrance to the Farmers Market. The application for transfer of the license was granted and Northeast appealed.

While the appeal was pending, the Board moved to remand since in granting McDonald's application it had relied on a personal inspection of the area and on measurements taken outside the presence of

---

1. 3 D.C.R.R. 2.2 provides:
     (a) No license . . . shall be issued for any place of business within 400 feet of any . . . recreation area operated by the District of Columbia Department of Recreation . . .
     (b) Said distance shall be measured between the nearest street main entrance to said place of business and the nearest street main entrance to said . . . recreation area by the shortest line between such entrances on, over, or across any public traveled way or public park or parking. . . .
     "Main entrance" has consistently been defined by the Board according to use, rather than architecturally. *See* opinion of Honorable Richmond B. Keech, Corporation Counsel for the District of Columbia, January 24, 1945.

2. R. at 124–25.

3. R. at 196.

the parties, procedures similar to those since held irregular in Citizens Ass'n of Georgetown v. D. C. Alcoholic B. C. Bd., D.C.App., 288 A.2d 666 (1972). This court, retaining jurisdiction, ordered the record on review remanded to the Board with directions to complete the remand proceedings within forty-five days.

Pursuant to the remand the Board issued an order requesting the presence of all parties at a meeting on July 10, 1972, "for the purpose of remeasuring the distance", and convening a hearing on July 11, 1972, "for the purpose of hearing testimony and argument on the aforesaid measurements and for the hearing of other matters not inconsistent with the . . . [remand] order".[4] As ordered, the parties met at the site and distances were remeasured. The two measurements obtained for the distance between the market and entrance B differed by 3 feet, but both exceeded 400 feet. The next day, at the hearing, Northeast first objected to the manner in which the measurements were made since the property lines were determined with reference to the edge of the public sidewalk rather than by official plats or surveyors' maps. It also offered to produce testimony concerning the main street entrance of the recreation area but the Board refused to accept it, stating that the remand was restricted to the question of measurement. Northeast then proffered that Walter Brooks, Jr., successor to Kremelmeyer in the Department of Recreation, was present and if called would testify that he is in charge of Hamilton Recreation Center, and that in his experience 80–90% of the users of the center use entrance A rather than B.

Counsel for McDonald's proffered information contained in the Board's confidential file as appropriate testimony concerning applicant's good moral character, but it is disputed by the parties whether such in-

formation was ever made available to Northeast.

Subsequently, on August 2, 1972, the Board issued a Summary of Further Proceedings which stated:

On a prior occasion two Members of the Board had viewed the general area with a view towards familiarizing themselves with the general geographic outlay of the neighborhood and not for any specific findings. Neither in its initial visit nor its subsequent visit to the premises, accompanied by counsel for the parties, did any of the Board Members rely on their own personal observations in making their findings of fact and conclusion of law which were based solely upon the evidence adduced by the witnesses.[5]

The Board concluded from the evidence that entrance B was the main street entrance to the recreation center and that it was over 400 feet from the main street entrance of the market, thus reaffirming its earlier findings. Northeast now argues that the Board erred in refusing to allow testimony on the question of the main entrance and in failing to make confidential information as to McDonald's moral fitness part of the public record.[6]

In Citizens Ass'n of Georgetown v. D. C. Alcoholic B. C. Bd., *supra,* this court held that it was improper for the Board to base its decision on a personal inspection of the premises made after the close of a hearing, without counsel being present, and remanded the case with directions that "[a]t the re-opened hearing, the Board should set forth the facts it considers to have been revealed as a result of the inspection . . . [and] then give the applicant and petitioner the opportunity to address themselves to these facts by evidence or argument." *Id.* at 670–671. We also concluded that all information contained in the Board's confidential file re-

---

4. Supp.R. at 206.

5. Supp.R. at 207.

6. We find petitioner's contention that the Board erred in measuring the distance to be without merit.

lating to its findings of the applicant's moral character and fitness should be entered into the record and the participants given an opportunity to address themselves to that evidence.

■ Recognizing that because of its reliance on a measurement and personal inspection undertaken subsequent to the original hearing, the dictates of Citizens Ass'n of Georgetown v. D. C. Alcoholic B. C. Bd., *supra,* had not been met, the Board requested a remand in order to remedy those procedural defects. Curiously, however, the Board limited its reconsideration on remand to the question of measurements without setting forth the facts revealed by the personal inspection and giving the parties an opportunity to address themselves to those facts by testimony or argument. This occurred despite the fact that, according to its original findings, the decision as to the main entrance to the recreation center was based on *both* the testimony and the personal inspection. To compound the confusion, in contravention of its earlier statement to the contrary, the Board disclaimed any reliance on the members' personal observations in making its findings in its Summary of Further Proceedings issued after the second hearing. Faced with these inconsistencies, we conclude it was error for the Board to refuse to admit further testimony on the question of the main entrance to the center.[7]

■ We are also disturbed by the controversy over the availability of information in the Board's confidential file concerning applicant's moral fitness and good character. It is clear that due process re-

quires such information to be made available to the parties as part of the public record.[8] What is not clear is whether this was done in this case.

During the hearing on remand, counsel for the applicant asked that the Board "open up its confidential records with regard to the Applicants to make this available to the Protestants and any other citizen of the District of Columbia . . . ."[9] The Chairman of the Board replied: "The Board notes [counsel's] proffer, and of course, the confidential file is part of the record . . . ."[10] This is the only reference to the confidential file appearing in the transcript. On this appeal the Board moved to supplement the record with this confidential information, explaining that:

At the hearing on remand, upon suggestion of counsel for intervenor, this file was made public and counsel for petitioner was given an opportunity to examine it . . . . Because no question respecting the contents was raised at that time, it was not included in the record on appeal. . . .

Petitioner opposed the motion to supplement, alleging that the confidential material was neither made public nor placed in the record, was not the subject of examination or cross-examination and that petitioner was not given an opportunity to examine it.[11]

■ In light of these conflicting statements and the absence of any clarification in the record, it is impossible for us to ascertain whether or not the confidential information was actually made availa-

7. "Reconsideration is the obvious opportunity available to an agency to cope with defects appearing on its first consideration. . . . But repair carpentry cannot be wrought on reconsideration unless the agency addresses itself to the defects. . . ." Braniff Airways, Inc. v. C.A. B., 126 U.S.App.D.C. 399, 413, 379 F.2d 453, 467 (1967).

8. Citizens Ass'n of Georgetown v. D. C. Alcoholic B. C. Bd., D.C.App., 288 A.2d 666 (1972).

9. Supp.Tr. at 189.

10. Supp.Tr. at 191.

11. We have denied the Board's motion to supplement the record, a ruling on which had been deferred pending argument on the merits.

ble to petitioner at the hearing on remand.[12] The decision of the Board is therefore

Reversed and the case remanded for further proceedings consistent with this opinion.

12. Since this case concerns an application for transfer of a license rather than initial granting of a license, we must presume that the matter of moral character was determined by the Board when the original license was issued. Ordinarily in such a case, the party opposing the transfer would have the burden of showing changed circumstances relating to the applicant's moral character. In this case, if petitioner was denied access to the Board's confidential files, it could not possibly carry that burden.