Carolyn DONNELLY, et al., Petitioners,

v.

DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, Respondent.

Safeway Stores, Inc., Intervenor.

No. 80–296.

District of Columbia Court of Appeals.

Argued May 13, 1981.

Decided Oct. 29, 1982.

---

Jack I. Heller, Washington, D.C., for petitioners.

Richard B. Nettler, Asst. Corp. Counsel, Washington, D.C., for respondent.[1]

Ralph N. Albright, Jr., with whom Avis E. Black, Washington, D.C., was on the brief, for intervenor.

Before KERN, MACK and FERREN, Associate Judges.

MACK, Associate Judge:

Petitioners appeal from the grant by Respondent—Alcoholic Beverage Control

---

1. This court granted, on March 8, 1981, respondent's motion to adopt the brief of intervenor.

Board of the transfer of a Class "A" License of Intervenor—Safeway Stores, Incorporated from its store at 521 12th Street, N.W. to its store at 415 14th Street, S.E. They claim that the Board's grant of Safeway's application was arbitrary, capricious and contrary to law for numerous reasons. We affirm.[2]

In 1979 Safeway sought to expand the store it operated on 14th Street, S.E. Toward that end, it attempted to transfer a Class "A" liquor license for its 12th Street, N.W. store, a license it had held for more than ten years and which was renewed annually without protest, to its 14th Street store. Safeway also sought to increase the size of its store and in furtherance of that plan entered into an arrangement with Liquor Shop, Inc. t/a Hank's Liquors located at 419 14th Street, S.E., to terminate their rental agreement. Pursuant to this arrangement, Hank's which for seven previous years had had its Class "A" license renewed at that location, agreed to vacate its premises by April 1, 1979.

On April 12, 1979, Safeway filed its application to transfer its liquor license and on April 23, 1979 Hank's filed an application to transfer its license from its 14th Street location to 1364 E Street, S.E., approximately 150 feet from Safeway.[3] Protests were filed against both transfer applications. Following hearings on July 9 and 10, 1979, the Board granted Safeway's application.[4]

■ ■ We must affirm the Board's grant of Safeway's transfer application unless we find that it was unsupported by substantial

evidence. *See* D.C.Code 1981, § 1–1509(e). This "substantial evidence" test requires

(1) the agency to make written findings of "basic facts" on all material contested issues; (2) these findings, taken together, must rationally lead to conclusions of law ("ultimate facts") which, under the governing statute, are legally sufficient to support the agency's decision; and (3) each basic finding must be supported by evidence sufficient to convince reasonable minds of its adequacy. [*Citizens Association of Georgetown, Inc. v. District of Columbia Zoning Commission,* D.C.App., 402 A.2d 36, 42 (1979).]

Since petitioners challenge the Board's grant as not fulfilling the first and third elements of the "substantial evidence" test, our review requires an application of those portions of the test to the facts of this case.

(1) Findings of "basic facts" on each material contested issue.

Petitioners contend that the Board failed to address a contested issue of material fact raised by the Advisory Neighborhood Commission ("ANC") in a July 2, 1979 letter to the Board. In that letter the ANC asserted that the area near Safeway was already "adequately and well served" by existing licensees and that the grant of the transfer "would permit an excessive concentration of retail liquor stores in a mainly residential area already well-served by retail liquor outlets." Specifically, petitioners protest that the Board did not address the issue of whether the surrounding area was "adequately served."

---

**2.** We reject Safeway's contention that petitioner's appeal is moot since its 14th Street license was reviewed twice without protest in the two years subsequent to the Board's grant of its transfer application. A renewal proceeding is premised on the validity of the initial granting of the license which here was issued pursuant to the challenged grant of Safeway's transfer application. In other words, so long as a liquor license is in effect for a certain premises the applicant for renewal is excused from certain requirements which might otherwise preclude the issuance of a new license. Thus, a renewed license may be "the end product of the allegedly defective hearing." *Kopff v. District of Columbia Alcoholic Beverage Control Bd.,* D.C.

App., 381 A.2d 1372, 1378 (1977) (mere renewal of a license while opposition to its original issuance continued did not moot the controversy when, had the initial application been denied, the Board would have been precluded, pursuant to DCRR § 2.4(a) [now 23 DCRR 204.1], from entertaining a second application for a one-year period).

**3.** Hank's was evicted from its 14th Street store on or about May 17, 1979.

**4.** The Board denied Hank's application after holding hearings on July 10 and 11, 1979. Hank's did not seek review of that denial.

In *Kopff v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 381 A.2d 1372 (1977), we discussed the role of the then-recently created ANC in Board hearings. Interpreting D.C.Code 1977 Supp., § 1–171i(d) [now D.C.Code 1981, § 1–261(d) ], which required the Board to give "great weight" to the concerns of the ANC, we held that " 'great weight' implies [making] explicit reference to each ANC issue and concern *as such,* as well as specific findings . . . with respect to each." *Id.* at 1384 (emphasis in original). In so holding, this court stressed that this requirement was necessary to "assure compliance with the 'great weight' mandate but also to facilitate judicial review." *Id.*

 In the instant case, the Board found that there was "insufficient evidence of ' . . . an excessive concentration of retail liquor stores . . . ' in this area"; it did not explicitly refer to "adequate[ ] serv[ice]" by existing licensees.[5] We cannot read this as a violation of *Kopff.*[6] *Kopff* requires that the Board address specific issues and concerns; it does not require that the Board couch its findings in language identical to

that in which the concerns are voiced. Here the Board, whether it couched its findings in terms of "adequate service" or "excessive concentration," nonetheless addressed the issue of the density of retail liquor establishments in the area surrounding Safeway. We, therefore, reject petitioners' contention that the Board did not adequately address the principal concern of the ANC.[7] *Cf. Bakers Local Union No. 118 v. District of Columbia Board of Zoning Adjustment,* D.C.App., 437 A.2d 176, 179–80 (1981) (Board's denial of application for special exception remanded due to Board having merely "summarized the position of the ANC, and [rejection of] it, without resolving the ANC's principal concern").

## (2) Sufficiency of the evidence

Before issuing a license, the Board must satisfy itself, *inter alia,* that the "place for which the license is to be issued is an appropriate one considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired." D.C.Code

5. In its Finding No. 37, the Board noted the ANC opposition to the transfer application based on, *inter alia,* the fact that the area was "already well served by retail liquor outlets . . . ."

6. In *Kopff,* this court remanded the case to the Board when the Board failed to give great weight to the ANC's concerns, was not cognizant of its duty to give the ANC's concerns great weight and it was unclear whether an ANC resolution opposing the grant of a license was admitted into evidence.

7. Petitioners also contend that the Board erred in excluding from evidence an exhibit which set out the names and addresses of the 17 Class "A" and a Class "B" retail liquor stores within a one mile radius of the proposed Safeway facility. In rejecting the proffered evidence, the Board stated:

[We are] not prepared to admit that document [while] this Board cannot rule on its accuracy. We're not concerned with the hundred stores in the neighborhood or within a mile, we're talking about the defined neighborhood . . . this Board is concerned with the delineated neighborhood. And we're not going to accept testimony or documents that go outside of that area.

Title 23, § 1009.1–A of the District of Columbia Municipal Regulations require the Board to delineate the relevant "neighborhood" for purposes of determining whether the place for which the license is to be issued is an "appropriate one." Sections 1009.2 and 1009.3 state that the neighborhood boundary lines shall be reasonably equidistant from the premises for which the application for the license is filed and that those lines shall not be less than 600 feet from the premises. Here, the Board delineated the "neighborhood" as that area within 600 feet of the premises and thereafter limited exhibits and testimony to that "neighborhood."

[W]e must accord considerable respect not only to the Board's evidentiary rulings themselves, but also to the Board's interpretation of the regulations that govern its evidentiary standards, as well as the Board's interpretation of the underlying statutory requirements for obtaining a liquor license which the agency has been charged with administering. [*Haight v. District of Columbia Alcoholic Beverage Control Bd.,* D.C.App., 439 A.2d 487, 491 (1981) (citations omitted).]

Since we cannot find that the Board here abused its discretion, we affirm its exclusion of evidence regarding the presence of liquor outlets outside the "neighborhood" surrounding Safeway but within one mile of the premises.

1981, § 25–115(a)(6). It is petitioners' contention that the Board's finding of appropriateness was erroneous.

Petitioners first submit that the Board failed to apply legally sufficient standards in determining the "appropriateness" of granting the application. In support of their contention they cite to several "criteria ... crucial to the determination of whether to grant, renew, or allow the transfer of liquor licenses" which were enunciated in *D.T. Corporation v. District of Columbia Alcoholic Beverage Control Board,* D.C. App., 407 A.2d 707, 712 (1979) (Newman, C.J., concurring), and which they claim were not addressed. "These criteria include: the location of the establishment ..., the availability of parking ..., the effect on local traffic conditions ..., the size of the establishment ..., the hours the establishment will remain open ..., the proximity of private residences or institutions, such as schools and churches ... and the wishes of the neighbors." *Id.* at 712–13 (citations omitted).

The record reflects that the Board did address and apply these criteria in determining the "appropriateness" of the application. The Board made findings of fact as to 1) the zoning of the premises and the presence of two other nonresidentially zoned districts within the neighborhood and "a number of small commercial establishments located within the immediate vicinity" of Safeway; 2) the size of the proposed expanded Safeway (48,000 square feet) compared to the proposed "beverage section" (2,500 square feet) and Safeway's ability to lock the section during nonoperating hours prescribed by local regulations and to store the liquor separately from other Safeway stock; and 3) the opposition of the ANC[8] to the transfer application and presentation of petitions opposing the application as well as testimony for and against it to the Board.

■ While we find that the Board addressed and applied the correct criteria in determining the "appropriateness" of its grant, that does not end our inquiry for petitioners' challenge to other facets of the Board's decision as being unsupported by substantial evidence.

Thus, petitioners contend that that portion of the Board's Finding No. 39 which reads "[t]he place for which the license is sought is appropriate considering ... the wishes of persons ... in the neighborhood" was unsupported by sufficient evidence. We cannot agree that reversal is warranted on this ground.

■ At the hearing, eight persons testified in support of Safeway's application while eleven testified in opposition. In addition, seven others who were present stated their opposition and nine letters of opposition were filed and accepted by the Board. Further, in its findings the Board noted that petitions containing 257 signatures opposing the application were filed and that the ANC had voiced its opposition to the transfer. While at first blush the weight of the evidence of opposition might bring into question the statement of the Board that the grant was appropriate in light of neighborhood wishes, we cannot say, on this record, that the finding was unsupported. While "neighborhood opinion is one important factor for the Board to consider[,] ... the clear language of [the statute requires] the Board to weigh other factors as well, and plac[es] the primary responsibility for decisions with the Board." *Spevak v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 407 A.2d 549, 554 n. 9 (1979). Here we are met with the Board's full consideration of the underlying bases for community concern surrounding the grant of the transfer. The hearing record reveals that the bulk of testimony and letters in opposition to the transfer revolved around opponents' concerns about the presence of Hank's customers in the Safeway

---

8. The Board noted the following bases for the ANC opposition: Safeway's earlier failure to curtail the objectionable conduct of persons who congregated in its parking lot as a result of the operation of Hank's; the adverse effect the sale of alcoholic beverages would have on a nearby senior citizens' residence as well as on other residents, schools and church properties; and the resultant excessive concentration of retail liquor stores in the area.

parking lot and the deleterious effect those customers had on Safeway shoppers and the neighborhood in general. In its findings the Board explicitly noted the ANC's position concerning Safeway having

> failed to take the necessary steps to curtail the conduct of certain people which existed in its parking lot as a result of the operation of Hank's Liquors, viz., panhandlers and loiters [*sic*] who congregated around Hank's Liquors store and in the parking lot, the use of obscene language by these persons against customers of Safeway, the use of the parking lot as "a public bathroom" and a place to deposit broken glass and trash, drinking of alcoholic beverages in automobiles parked on lot, etc.

In response to citizen and ANC concerns the Board found that Safeway had taken steps to alleviate the parking lot conditions by asking disorderly persons to leave, giving the Metropolitan Police Department "permission to come onto the Safeway lot anytime [they] felt [they] needed to" and "terminating its lease with Hank's." It further found that conditions in the lot had improved since Hank's closing and noted that the transfer application was sought for a "beverage section" in an already existing business rather than for a "free-standing" liquor store. As such, the Board stated that "[i]t would be speculative for the Board to assume that Applicant would destroy its overall supermarket business by allowing the sale of alcoholic beverages—of which Applicant would have direct control over—to create an adverse effect on its customers." *See Citizens Association of Georgetown, Inc. v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 279 A.2d 514 (1971) (where objections to the renewal of a licensee are related to operational deficiencies peculiar to a particular license, the Board is not prevented from granting a license to an otherwise qualified applicant).

Moreover, we disagree with petitioners' contention that there was insufficient evidence in the record to support the Board's finding that Safeway was likely to control future disorder and unsightliness in its parking lot. The Board heard the testimony of Safeway management concerning its past and future efforts to control the conduct of persons in its parking lot. Rolf Ungert, manager of Safeway, testified that it would be his policy not to sell liquor to intoxicated persons, to ask prospective purchasers for identification and not to sell the half-pint bottles of liquor which were preferred by persons who loitered in Safeway's parking lot. He further stated that in the past he had asked intoxicated persons to leave the lot and that he expected better police cooperation once Safeway was the sole tenant of the premises. John Mitchell, Safeway's Property Manager testified that one reason Safeway bought out Hank's lease was "the continual pressure we received as a result of the element it attracted." Officer Able Copeland of the Metropolitan Police Department testified that he had observed drinking and panhandling on the lot and made several arrests there. He further testified that the situation had improved since Hank's closed and that Ungert had cooperated with him. Finally, Officer Benny Vines, as noted in the Board's findings, testified that Ungert was constantly speaking with him, was cooperative and gave him permission to enter the Safeway lot at any time.

In conclusion this evidence reveals the Board's recognition and meeting of the community's concerns, and supports its findings of appropriateness in light thereof.[9]

---

9. At the hearing Pauline House, president of House Market Research, Inc., testified that she had conducted a survey of public opinion concerning the grant of Safeway's application. Specifically, she testified that 671 persons were asked "In this new Safeway do you favor a Safeway controlled beer, wine and liquor section?" and that 381 said "yes," 223 said "no" and 67 had no opinion. On cross-examination she testified that of the persons questioned at their homes within the designated neighborhood surrounding Safeway 74 had answered "yes," 72 said "no" and 4 "did not know." The rest of the survey was conducted in and around the store itself.

Petitioners objected to the admissibility of this testimony and to the survey documents on which it was based, on the ground that they

Petitioners also challenge the Board's conclusion that each of Safeway's principal officers was of "good moral character and generally fit for the trust to be in him reposed." D.C.Code 1973, § 25–115(a)(1). They contend that the conclusion was arbitrary and unlawful in that it was unsupported by substantial evidence and was based on evidence which petitioners did not have the opportunity to confront.

■ "Since this case concern[ed] an application for transfer of a license rather than initial granting of a license, we must presume that the matter of moral character was determined by the Board when the original license was issued." *Northeast Liquors, Inc. v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 302 A.2d 222, 226 n. 12 (1973). As such, petitioners had the burden of showing changed circumstances relating to the moral character of Safeway's principal officers. *Id.*

This court has carved out two exceptions to the rule transferring the burden of proof to petitioners 1) when the information on which the Board based its finding was not made available to petitioners, *id.,* or 2) when there is no evidence *in the record* directed to and in support of the Board's finding, *Citizens Association of Georgetown, Inc. v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 288 A.2d 666 (1972). In both these instances, this court reasoned, a petitioner would be effec-

tively precluded from carrying its burden. Neither was the case here, however.

The verified report of an investigator in the Office of Alcoholic Beverage Control which was a part of the record below indicated that none of the four principal officers of Safeway had, within the five years prior to its application, been convicted under the National Prohibition Act nor had they been convicted of a misdemeanor or felony within ten years of the application. The report further stated that no member of the officers' families held liquor licenses in the District of Columbia and that there was no indication that any of the officers were not then currently in compliance with § 25–115(a). Further, two character references were received by the Board.

■ Clearly, this unrebutted evidence was sufficient to support and rationally led to the Board's conclusion regarding the fitness of Safeway's officers, *see Haight v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 439 A.2d 487, 493 (1981) (Board correctly construed the statutory requirement of good moral character and general fitness to proscribe illegal conduct and no more), and we affirm the Board's ruling.

Lastly, petitioners claim that the Board acted arbitrarily in ruling that D.C.Code 1973, § 25–115(c) did not apply to this application. We disagree. Section 25–115(c) provides, in pertinent part,

had moved for discovery of the survey documents, had not received them, and needed to review them in order to effectively cross-examine House. Further, they contended that House was being offered as an expert witness and, as such, they were entitled to see the data underlying her opinion. The Board, after hearing argument, refused to admit the survey documents into evidence but did allow House to testify as to the results.

[W]hile administrative proceedings are governed by more liberal and flexible evidentiary standards than judicial proceedings, the agencies are invested with a correspondingly greater discretion than trial judges in determining the admissibility of evidence. *See Kopff v. District of Columbia Alcoholic Beverage Control Board,* D.C.App., 381 A.2d 1372, 1385 (1977). Because there is no jury to shield, agencies may tend to resolve any doubts in favor of admitting the evidence.

Nevertheless, the DCAPA mandates the exclusion of "irrelevant, immaterial, and unduly repetitious evidence." D.C.Code 1978 Supp., § 1–1509(b). The Alcoholic Beverage Control Board itself has incorporated more specific evidentiary guidelines into its own regulations. The evidence at Board hearings is limited to material evidence relative to the issues arising in the proceeding as may be necessary to protect the public interest or to prevent injustice. Evidence will· be excluded in the discretion of the Board if it is repetitious or redundant. *The Board shall determine the materiality, relevance and probative value of any evidence submitted.* [3 DCRR § 20.5 (emphasis added).] [*Haight v. District of Columbia Alcoholic Beverage Control Bd., supra* at 491.]

We cannot find that the Board abused its discretion in ruling on the admissibility of this evidence.

no place for which a license under this chapter has not been issued and in effect on the date the written objections hereinafter provided for are filed, shall be deemed appropriate if the owners of a majority of the real property within a radius of six hundred feet of the boundary lines of the lot or parcel of ground upon which is situated the place for which the license is desired ... object to the granting of such license ....

 The Board found that it had issued a Class "A" license to Hank's Liquors for the license year February 1979 through January 31, 1980 and that Safeway had filed for and the Board had issued a Class "A" license for its premises at 521 12th Street, N.W. for that same year. The Board also found that Safeway had filed an application to transfer its license to 415 14th Street, S.E. on April 12, 1979. Further, the Board found that the 415 14th Street, S.E. premises was a single structured building which previously housed Hank's and that Safeway had incorporated the space previously used by Hank's into its store at 415 14th Street, S.E. It, therefore, concluded that 25–115(c) did not apply to Safeway's transfer application as there was a Class "A" license in existence at that location and on the date Safeway "filed its application for transfer."[10]

We agree with the Board's conclusion and find it neither arbitrary nor capricious. D.C.Code 1981, § 1–1510(a)(3). Despite the eviction of Hank's from its 14th Street location, its Class "A" license to operate at that location remained valid and extant.[11] As such, it was "in effect," albeit inactive, during that portion of 1979 when petitioners filed their objections. Section 25–115(c) was, therefore, inapplicable to this transfer application and the petitions petitioners submitted pursuant thereto were ineffectual to prevent the transfer of Safeway's Class "A" license to its 14th Street store.[12]

*Affirmed.*

---

10. The Board was incorrect in referring to the date of the filing of the application instead of the date on which written objections were filed as specified in § 25–115(c). In light of our conclusion that the license was extant throughout the period from February 1979 through January 1980 and the record's reflection that the opposing petitions were filed between May and July 1979, we find this error to be harmless.

11. D.C.Code 1973, § 25–114 provides that every annual license shall date from the first day of February and expire on the thirty-first day of January in the following year.

12. Petitioners also contend that the Board erred in reading 25–115(c) as requiring the signatures of the owners of the majority of the real estate rather than those of a majority of the owners of real estate within 600 feet of Safeway to prevent the issuance of the license. Since there was no evidence presented as to the quantum of real estate owned by the signers of the petitions, the Board ruled that petitioners had not met their burden of proof as to the quantum of property required to be represented under the statute. Considering our resolution of the 25–115(c) issue on the alternative grounds stated above, we do not address this contention.