**Tom COUMARIS, Petitioner,**

v.

**DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, Respondent,**

**Circle I Productions, Inc., Intervenor.**

**Nos. 94–AA–139, 94–AA–242.**

District of Columbia Court of Appeals.

Argued Jan. 20, 1995.
Decided June 22, 1995.

---

J. Keith Ausbrook, Washington, DC, for petitioner.

Vanessa Ruiz, Acting Corp. Counsel at the time the statement was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, DC, filed a statement in lieu of brief for respondent.

Benjamin J. Lambiotte, Washington, DC, for intervenor.

Before STEADMAN and SCHWELB, Associate Judges, and PRYOR, Senior Judge.

SCHWELB, Associate Judge:

Tom Coumaris asks us to review a decision of the District of Columbia Alcoholic Beverage Control Board granting Circle I Productions, Inc. a license to sell alcoholic beverages at a nightclub in northwest Washington, D.C. Coumaris had submitted a petition proposal to the Board in opposition to the application. This submission was the first step towards what Coumaris hoped would be the exercise of a neighborhood veto, which was to be accomplished by collection, in support of the protest, of the signatures of a majority of the voters residing within a 600–foot radius of the establishment. *See* D.C.Code § 25–115(e) (1991). The Board rejected the petition upon the ground that the supporting statement contained false representations of fact.

In this court, Coumaris' primary contention is that the Board exceeded its authority in rejecting the petition outright. Because the Board failed to articulate the legal basis for its exercise of that authority, we remand the case for further proceedings.

## I.

In February 1993, Circle I filed an application with the Board for a retailer's class C/N license to sell alcohol at a nightclub at 1831 14th Street, N.W. On April 12, 1993, Coumaris circulated to residents in the vicinity of the proposed establishment a flyer detailing his objections to Circle I's application. Coumaris claimed that "what [Circle I] never discloses is that [its] real application (copy attached) is for a public hall ... and for a nightclub license—all liquor no food." This statement was untrue,[1] for Circle I proposed to serve food at the establishment.

Coumaris also attached to his flyer what purported to be a copy of Circle I's Certificate of Occupancy. On the copy, however, he obliterated the language indicating that use of the premises as a restaurant was authorized. He attached the cover sheet to Circle I's public hall license, but selectively omitted those portions which showed that Circle I had also applied for a restaurant license.

In his flyer, Coumaris further asserted that once granted, liquor licenses had "no mortality; they live forever." He implied that such licenses are freely transferable and renewable and that members of the public would have no opportunity to protest a renewal or transfer of the license before the Board. This representation was inaccurate. *See, e.g., Donnelly v. District of Columbia Alcoholic Beverage Control Bd.,* 452 A.2d 364, 365–66 (D.C.1982).

The District of Columbia Alcoholic Beverage Control Act, D.C.Code §§ 25–101, *et seq.* (1991) ("the Act"), authorizes a process by which residents of the immediate area in which a license to sell alcoholic beverages is sought may oppose the issuance of the license. A majority of the registered voters within a 600–foot radius of the applicant's premises are effectively given a veto power over the application. *See Gerber v. District of Columbia Alcoholic Beverage Control Bd.,* 499 A.2d 1193, 1197 (D.C.1985); *MacArthur Liquors, Inc. v. Palisades Citizens Ass'n,* 105 U.S.App.D.C. 180, 265 F.2d 372 (1959). An eligible objector may initiate the petition process by submitting to the Board a petition proposal, which must be accompanied by a statement of no more than 100 words identifying the basis for the objection. D.C.Code § 25–115(e)(3).

On April 27, 1993, Coumaris submitted his petition proposal to the Board. His primary stated basis for objecting to the issuance of the license was that "a nightclub license, which does not require food, for a building with a legal seated occupancy of 499 persons is incompatible with our adjoining residential area." In addition, Coumaris again represented that "such a license can be transferred."

On May 12, 1993, Circle I filed a motion to dismiss the petition, claiming that Coumaris' petition proposal materially mischaracterized

---

1. For purposes of this petition for review, we present the facts, and draw inferences therefrom, in conformity with the Board's findings.

the nature of Circle I's establishment. Circle I asserted that Coumaris had falsely represented that the proposed establishment would not serve food, when in fact it would, and that a license, once issued, was automatically transferable, when in fact a transfer could not be accomplished without leave of the Board. Circle I argued that Coumaris had irreparably tainted the petition process by circulating false and misleading information to residents of the neighborhood.

On June 16, 1993, the Board, through its Chair, Mary Eva Candon, orally granted Circle I's motion to dismiss Coumaris' petition. The decision was grounded on the "cumulative misrepresentation of the nature of the establishment that produced bias on the part of those reading the petition and [on] the material misrepresentations of fact." Ms. Candon cited

> the repeated mentioning that the licensee would have no food ... [which] was a material misrepresentation of fact, and this went beyond ... the face of the petition, with the attached C[ertificate] of O[ccupancy] which was materially altered to prevent anyone signing the petition from recognizing that the license was a restaurant license.... Another point is that it misrepresents to the potential signatories the Board's role in whether or not a transfer could or could not take place.

Ms. Candon did not address the question whether dismissal of the petition was authorized by the Act.

During the summer of 1993, the Board held several public hearings on the merits of Circle I's application. On December 15, 1993, the Board issued a final written order granting the license. The Board reiterated in its order that it had dismissed Coumaris' petition "because of material misrepresentations regarding the application and omissions of fact." The Board's order contained detailed Findings of Fact and a single ten-line Conclusion of Law. Once again, the question whether the Board had the authority to dismiss Coumaris' petition was not addressed. Coumaris filed a timely petition for review.

## II.

■ The scope of our review is well established. The District's Administrative Procedure Act, D.C.Code § 1–1510(a)(3)(E) (1992), requires us to affirm the Board's decision if it is supported by substantial evidence. *Donnelly, supra,* 452 A.2d at 366. To pass muster under the substantial evidence standard, the Board must

> (1) make written findings of "basic facts" on all material contested issues; (2) these findings, taken together, must rationally lead to conclusions of law ("ultimate facts") which, under the governing statute, are legally sufficient to support the agency's decision; and (3) each basic finding must be supported by evidence sufficient to convince reasonable minds of its adequacy.

*Id.* at 366 (quoting *Citizens Ass'n of Georgetown, Inc. v. District of Columbia Zoning Comm'n,* 402 A.2d 36, 42 (D.C.1979)).

■ Insofar as the Board's legal conclusions are concerned, courts "must defer to an agency's interpretation of the statute it administers, as long as that interpretation is reasonable and not plainly wrong or inconsistent with its legislative purpose." *McCulloch v. District of Columbia Rental Hous. Comm'n,* 584 A.2d 1244, 1248 (D.C.1991) (citations omitted); *see generally, Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 2781–83, 81 L.Ed.2d 694 (1984). No deference is appropriate, however, where the agency has failed to identify the question of statutory construction to be addressed. *See Zenian v. District of Columbia Office of Employee Appeals,* 598 A.2d 1161, 1166 (D.C. 1991). The canon requiring courts to accord weight to the administrative construction of a statute has no logical application where the agency has engaged in a practice without having made any discernable attempt to construe the purportedly ambiguous terms of the legislation. *See The Mail Divisor Cases,* 251 U.S. 326, 332–33, 40 S.Ct. 162, 163–64, 64 L.Ed. 290 (1920) (plurality opinion per Holmes, J.), *aff'g K.C.M. & O. Ry. Co. v. United States,* 53 Ct.Cl. 258 (1918).[2] It

---

2. In *K.C.M. & O. Ry. Co.,* the Court of Claims, in an opinion affirmed by the Supreme Court in the

*Mail Divisor Cases,* held that the principle according weight to the executive construction of a

would be incongruous to accord substantial weight to an agency's interpretation of a statute where the record is barren of any indication that the agency gave any consideration at all to the statutory language or to the structure or purpose of the provisions which were ostensibly being construed. Moreover, although judicial deference is at its zenith when an administrative construction of a statute has been consistent and of long standing, *see, e.g., Superior Beverages, Inc. v. District of Columbia Alcoholic Beverage Control Bd.*, 567 A.2d 1319, 1325 (D.C. 1989),[3] "an agency may not bootstrap itself into an area in which it has no jurisdiction by repeatedly violating its statutory mandate." *Federal Maritime Comm'n v. Seatrain Lines, Inc.*, 411 U.S. 726, 745, 93 S.Ct. 1773, 1785, 36 L.Ed.2d 620 (1973).

### III.

■ Coumaris contends that the Board lacked the authority to dismiss his petition proposal. He maintains that the only remedies available to the Board were to revise the proposal with his consent, or to request Coumaris to do so.

The Act states in pertinent part that in order

> [t]o initiate the petition process, any eligible objector shall submit to the Board a petition proposal and a statement of no more than 100 words identifying the basis for the objection.... To qualify as valid a petition proposal shall identify as the basis for the objection 1 or more of the conditions set forth in subsection (b)(1) and (b)(2) of this section.[4]

D.C.Code § 25–115(e)(3). After the Board has received the proposal, it must

determine whether the proposed statement is non-discriminatory in effect or intent ... and whether it complies with the requirements of this chapter ... and any other applicable laws and rules of the District.

*Id.* The Act goes on to state that the Board

> may revise the proposed statement, subject to the consent of the objector, or may request the objector to submit a revised statement.

*Id.* Finally,

> [u]pon determining that the statement complies with the requirements of this paragraph, the Board shall approve the statement and shall order that the statement ... be printed on all petition forms circulated to obtain the signatures of eligible objectors.

*Id.* After a petition has been approved and circulated, the Board is required to deny an application for a new license if it receives valid written objections from a majority of the registered voters living within a 600–foot radius of the establishment in question. *Id.* § 25–115(e)(1).

The foregoing provisions do not explicitly authorize the Board to disapprove or dismiss a petition proposal. The Board is required, however, to determine whether the proposed statement is nondiscriminatory in effect or intent, and whether it is consistent with District of Columbia law. Obviously, defects with regard to these requirements cannot readily be cured by revising the language of the statement. Accordingly, and notwithstanding the absence of explicit language authorizing dismissal of the petition,[5] we view

---

statute "does not apply here, because we are concerned with what is called a construction, but which is, we think, a usage that had its origin in the duty of exercising judgment and discretion *and not in interpretation of doubtful terms....*" 53 Ct.Cl. at 301 (emphasis added).

**3.** Circle I contends that the Board has previously dismissed petition proposals in situations comparable to this one.

**4.** These subsections deal with such considerations as the potential effect of the establishment on real property values, on peace, order and quiet, on residential parking needs, and on vehic-

ular and pedestrian safety, D.C.Code § 25–115(b)(1), and more generally with the question whether the proximity of the establishment to a residential area would generate a substantial adverse impact on the residents. *Id.* § 25–115(b)(2).

**5.** In 1992, the following provision was added to § 25–115(e):

> (7A) If the Board determines at any time that proponents, circulators, or signers of a petition acted due to motives that are inconsistent with the purposes [of the Act] or any other provision of law, the Board shall declare the petition null and void.

as inescapable the inference that the Board may (and indeed must) reject a petition which is discriminatory or unlawful.

■ The statute also provides, as we have seen, that the Board may revise the proposed statement with the objector's consent, or request the objector to revise it. The next sentence of § 25–115(e)(3) states that if the statement complies with applicable requirements, the Board shall approve it. Where a defect in the statement can be cured, the Act has provided two remedies—revision by the Board or revision by the objector. Dismissal of the petition is not authorized, at least explicitly.

■ Circle I does not allege that Coumaris' petition was discriminatory or unlawful in the sense contemplated in § 25–115(e)(3). Rather, Circle I has relied on Coumaris' false representations in the statement accompanying his protest petition and in the flyer which he had previously distributed in the neighborhood.

Considering only the false representations in the statement itself, it appears that each of the remedies specified in the statute was readily available. The Board could have removed the offending portions, or could at least have given Coumaris the opportunity to agree to their removal. Alternatively, the Board could have requested Coumaris to revise his statement and to eliminate the misrepresentations. Where the remedies explicitly set forth in a statute are plainly available, a substantial question is raised as to whether the agency may take other far more drastic action, which is authorized upon a showing of improper motive, but which is not mentioned at all in the portion of the statute which the Board was purporting to apply. *Expressio unius est exclusio alterius.*

But Circle I contends that Coumaris effectively poisoned the well from which the neighborhood residents would have to draw sustenance in the exercise of their right to oppose the issuance of the license to Circle I. Coumaris did so, according to Circle I, by telling tall tales in his flyer. Circle I argues that the purging of false representations from the statement submitted by Coumaris in support of his protest petition could not undo the damage inflicted by Coumaris' earlier falsehoods. Accordingly, says Circle I, dismissal of the petition was the only available effective remedy.

Circle I's contention may be a realistic one. Indeed, the Board found that Coumaris' "misrepresentation of the nature of the establishment created bias on the part of those reading the petition." We join Justice Kennedy in his rejection of the notion that "one who violates his testimonial oath is no worse than the student who claims the dog ate his homework." *ABF Freight System, Inc. v. N.L.R.B.,* —— U.S. ——, ——, 114 S.Ct. 835, 840, 127 L.Ed.2d 152 (1994) (concurring opinion).

To be sure, Coumaris' inaccurate representations were not made under oath. Indeed, they were initiated in a flyer which might usefully be compared to election propaganda, a form of expression which many citizens are likely to take with a grain of salt. But Coumaris, who is an attorney, repeated his incorrect statements in a formal submission to a public agency. The Board arguably had the right to deny Coumaris relief on the basis of his "intentional subversion of the Board's processes." *Id.* —— U.S. at ——, 114 S.Ct. at 842 (Scalia, J., concurring).[6]

The effect of the Board's action, however, was to deny registered voters in the immediate area of the establishment the opportunity to vote the license up or down. To state that such relief is not to be ordered lightly is to belabor the obvious. This court and the Supreme Court have emphasized the importance of preserving inviolate the citizen's right to vote. *See, e.g., Harvey v. District of Columbia Bd. of Elections and Ethics,* 581 A.2d 757, 758 n. 3 (D.C.1990) (citing *inter alia, Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S.Ct. 1064, 1071, 30 L.Ed. 220 (1886)). Here, the subject with respect to which that

The Board did not invoke this provision in the present case. As the Act is now written, an improper motive constitutes the sole ground on which the Board is explicitly authorized to declare a petition "null and void," *i.e.,* to dismiss it.

6. There is no indication, however, that the Board acted upon the theory suggested by Justice Scalia in *ABF Freight System.*

right was to be exercised—the sale of liquor in a nightclub in the immediate area of the prospective voters' homes—could have significant consequences for the quality of their lives.[7] Even if Coumaris misled local residents by providing them with incorrect information, it is not obvious that cancellation of the election is the appropriate remedy, especially under a statute which does not expressly authorize it. In general, the truth is the most effective antidote to mendacious electioneering.[8]

## IV.

The issues which we have discussed are hardly trivial. Under these circumstances, the Board, before exercising its authority to disapprove the petition altogether, was required to analyze with some care the language, structure, and purpose of the statute which it was purporting to apply, and to provide a reasoned construction of its authority to take the action that it did.

As we stated in *Dietrich v. District of Columbia Bd. of Zoning Adjustment,* 293 A.2d 470, 473 (D.C.1972),

> the function of the court in reviewing administrative action is to assure that the agency has given full and reasoned consideration to all material facts and issues. The court can only perform this function when the agency discloses the basis of its

order by an articulation with reasonable clarity of its reasons for the decision. "The only role for a court is to insure that the agency has taken a hard look." *Kleppe v. Sierra Club,* 427 U.S. 390, 410 n. 21, 96 S.Ct. 2718, 2730, n. 21, 49 L.Ed.2d 576 (1976); *see also Eilers v. District of Columbia Bureau of Motor Vehicles Servs.,* 583 A.2d 677, 686 (D.C.1990). For aught that appears, the Board has not examined the words of the statute it was construing, nor has it articulated any recognition of the significant and difficult questions presented by this case. According to Circle I, the Board, in dismissing Coumaris' petition proposal, "concluded implicitly that it was empowered to grant the remedy sought by Circle I." In this case, an "implicit" conclusion on a subject of such significance is not sufficient.

"It is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803). Because we accord "great weight" to the construction by agencies of statute which they administer, *see, e.g., Superior Beverages, supra,* 567 A.2d at 1325 (citations omitted), however, we are reluctant, even in the present circumstances, to decide the legitimacy of the remedy imposed by the Board without meaningful input from the Board. Accordingly, we vacate the Board's decision and remand the case for further proceedings consistent with this opinion.

*So ordered.*[9]

---

**7.** We are not unmindful of Circle I's argument that the right to file a petition proposal (as distinguished from the right to vote on an approved petition) is an individual right, properly subject to forfeiture for misconduct. The dismissal of the petition does, however, have consequences for the residents of the neighborhood with respect to their opportunity to be heard on a matter of potential importance to them. The ramifications for these prospective voters should at least be considered as part of the Board's calculus.

**8.** Indeed, the importance of preserving the right of the citizen to engage in free and robust discussion of public issues suggests that caution ought to be exercised before a petition is invalidated on the basis of statements made during the course of a "campaign." "It is ... in our [constitutional] tradition to allow the widest room for discussion [and] the narrowest range for its restriction, particularly when this right is exercised in conjunc-

tion with peaceable assembly" *Thomas v. Collins,* 323 U.S. 516, 530, 65 S.Ct. 315, 322–23, 89 L.Ed. 430 (1945), or, as in this case, with peaceable petition for redress of a real or perceived grievance. But see note 9, *infra.*

**9.** We dispose summarily of the remaining issues. We are satisfied, notwithstanding Coumaris' assertions to the contrary, that the Board's findings with respect to the potential impact on the neighborhood of the granting of the license are supported by substantial evidence.

We likewise reject Coumaris' contentions that the Board improperly considered his statements in the flyer and that it thereby violated his rights under the First Amendment. These contentions were not presented to the Board. "A reviewing court usurps the agency's function when it sets aside the administrative determination upon a ground not theretofore presented and deprives the [agency] of an opportunity to consider the matter, make its ruling, and state the reasons for

PRYOR, Senior Judge, concurring:

It is certain that the D.C.Code provides specific procedures governing the Alcoholic Beverage Control Board's response to petitions in opposition to the grant of a license to sell alcohol. It is also evident that the provisions of the statute are intended to give residents a voice in Board decisions which will affect the community.

In this instance, the petitioner, in opposing the license application, declared and distributed deliberate and blatant false statements. Our responsibility in this court is, of course, to review the Board's decision in terms of the pertinent statutory provisions. It is settled that a governmental agency should have broad authority and reasonable latitude to perform its function. The precise tension which has arisen in this case relates to the fact that the statute does not expressly authorize the Board to dismiss a protest petition, and the Board has given a terse explanation of its action. Given the varied, sometimes divergent, interests which the majority opinion has carefully identified, I agree that this is an important concern. The Board is obliged to explain itself. Thus, I do not seriously oppose the remand. Yet, I think it must be said that the statutory provisions in question were likely drafted on the premise that protest applications, like legal pleadings, must be accurate, non frivolous, and asserted in good faith. It would seem implicit, though not expressly written, that the Board has the authority to dismiss a petition. I think the Board concluded that this was such a case, and that they were treating it appropriately. However, for the longer term, the requirement of clarity is probably wise.

I reluctantly concur.

its action." *Unemployment Compensation Comm'n v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946). Because there will be further proceedings on remand, however, the Board, in the exercise of its discretion, may (but need not) permit Coumaris to raise issues not previously presented.

Circle I contends that the Board was authorized to dismiss the petition on the basis of the 1992 amendment authorizing dismissal of a peti-

tion as "null and void" if its proponents acted with an improper motive. *See* D.C.Code § 25–115(e)(7A), quoted in note 5, *supra*. The Board did not consider this issue, and "an administrative order can be sustained only upon the basis relied upon by the agency." *Cooper v. District of Columbia Dep't of Employment Servs.,* 588 A.2d 1172, 1176 (D.C.1991). We leave to the Board's discretion the question whether Coumaris' motives may or should be considered on remand.