In re Application to Suspend or Revoke State Liquor License No. 1442, EDMUND BURKE, Supervisor of Liquor Control of the State of Missouri, Appellant, v. MARTHA FRANCES· COLEMAN.—No. 40019.—202 S. W. (2d) 812.

Division Two, June 9, 1947.

*J. E. Taylor,* Attorney General, and *William C. Blair,* Assistant Attorney General, for appellant.

*F. J. Frankenhoff* for respondent.

LEEDY, P. J.—This is a companion case to one similarly styled, but bearing No. 40,020, decided concurrently herewith. Both are proceedings brought under Sec. 4905 B [Laws 1945, pp. 1030-31] to review decisions of the Supervisor of Liquor Control revoking licenses issued under the Liquor Control Act [Chap. 32, R. S. '39 and

Mo. R. S. A.] to Martha Frances Coleman. The case at bar involves license or permit No. 1442, to sell intoxicating liquor by the drink at "The New Charleston," located at Main and Felix streets in the City of St. Joseph, for the period beginning July 1, 1945, and ending June 30, 1946. Upon a hearing duly held, the Supervisor found the licensee guilty on seven of the nine charges preferred against her, dismissed two of them, and ordered her license revoked, effective May 25, 1946. The circuit court, on review (upon an examination of the transcript of the evidence and proceedings had before the Supervisor), held that the Supervisor's "decision is against the weight of the evidence and is not supported by competent, substantial evidence on the whole record," and, accordingly, ordered and adjudged that it be set aside. The Supervisor appeals. The licensee has filed no brief.

The question as to whether the appeal presents a moot case has been determined in the companion case, and, hence unnecessary to be discussed here.

The seven charges upon which the license was ordered revoked were that Martha Frances Coleman, did:

(1) On the licensed premises on March 30, 1946, unlawfully suffer to be sold to Edgar Foster, by her employee, intoxicating liquor, to-wit: ½ pint of whiskey, between the hours of 1:30 A. M. and 6:00 A. M.;

(2) on March 31, 1946, on said licensed premises, unlawfully suffer to be sold to Edgar Foster, by her employee, intoxicating liquor, to-wit: one drink of whiskey and ½ pint of whiskey between the hours of midnight Saturday, March 30, and midnight Sunday, March 31;

(3) on April 6, 1946, unlawfully suffer to be sold, by her employee, on her licensed premises, to Edgar Foster, intoxicating liquor, to-wit: seven drinks of whiskey between the hours of 1:30 A. M., and 6:00 A. M.;

(4) on April 7, 1946, unlawfully suffer to be sold, by her employee, on her licensed premises, to Edgar Foster, intoxicating liquor, to-wit: seven drinks of whiskey between the hours of 12:00 o'clock midnight April 6 and 6:00 A. M., April 7;

(5) on Sunday, April 7, 1946, unlawfully suffer to be sold, by her employee, on her licensed premises, to Edgar Foster, intoxicating liquor, to-wit: four drinks of whiskey between the hours of 1:00 P. M., and 4:00 P. M.;

(6) on Sunday, April 7, 1946, unlawfully suffer to be sold, by her employee, on her licensed premises, to Edgar Foster, intoxicating liquor, to-wit: two drinks of whiskey;

(7) on or about March 30, 1946, unlawfully suffer to be sold, by her employee, on her licensed premises, to Edgar Foster, intoxicating liquor, to-wit: ½ pint of whiskey which had not been inspected and labeled according to provisions of the Liquor Control Act, . . . and which ½ pint of whiskey did not have upon it the

certificate and label of the Supervisor of Liquor Control of the State of Missouri, and was not contained in a container stamped or labeled as provided by Article 1, Chapter 32, R. S. Mo. 1939.

The supervisor's statement fairly states the facts, which we adopt, as follows: "There was a sharp conflict between the testimony of Edgar Foster, an agent of the Department of Liquor Control, and of the licensee's employees, her husband, Ora Coleman, and his twin brother, Ira Coleman, who jointly managed the place, and Lula May Grant, a barmaid. Agent Foster testified that he made the purchase of intoxicating liquor at the time and place charged in the first charge of the complaint from Ira Coleman, employee of respondent and one of her managers, after 1:50 A. M., on Saturday, March 30, which was twenty minutes after the closing time as set out in Section 4891, Laws of Missouri 1941, and that the purchase was made on the licensed premises which were open and doing business àt that time, and it was stipulated that the bottle which he testified he purchased did contain intoxicating liquor. Foster testified that he purchased the whiskey described in the second charge on Sunday, March 31, 1946, from a barmaid whom he knew as Lula May Branch, but whose correct name was Lula May Grant, and that the premises were open on that Sunday doing business. Foster testified that he made the purchases of whiskey described in the third charge at the time and place therein described on April 6, 1946, between the hours of 2:20 A. M., and 6:30 A. M., from two persons—a barmaid, whom he knew as Alice, and a bartender, whom he knew as Pete Maiben, and that the place was open and other patrons were in there. Foster testified that he made the purchases of whiskey as described in the fourth charge at the time and place therein described on Sunday, April 7, 1946, be-. tween 2:30 A. M., and 6:15 A. M., from a waitress whom he knew as Alice Burton and a bartender whom he knew as Pete Maiben. Foster testified that he made the purchases of whiskey described in the fifth charge at the time and place therein described between 1:20 P. M., and 3:20 P. M., of the same Sunday from the same employees of the licensee as stated in the fourth charge. Foster testified that he made the purchases of whiskey described in the sixth charge at the time and place therein described between 8:55 P. M., and 9:45 P. M., on the same Sunday from the same employees of the licensee. He testified that each time he made these purchases after hours and on Sunday, the place was open and doing business with a number of customers present on each occasion. To support charge seven, it was stipulated that the ½ pint of whiskey, which he purchased on March 30, 1946, from Ira Coleman, did not have any certificate or label of the Supervisor of Liquor Control of the State of Missouri on it, but instead had a label, or tax stamp, of the State of Wisconsin thereon. Foster testified that he saved the bottle of whiskey which he purchased, and it was produced in evidence, and he testified that he saved all or portions of

most of the drinks that he purchased, which he preserved in evidence bottles, and had them analyzed by a chemist of the Department of Liquor Control of the State of Missouri. These samples were likewise produced in evidence. The analysis showed that they contained intoxicating liquor—in fact, there was no dispute as to the fact that the bottle and the samples did contain intoxicating liquor. Foster further testified that he never saw the licensee herself, Martha Frances Coleman, around the place, but that apparently the place was in charge of her husband, Ora Coleman, and his twin brother, Ira Coleman. He further testified that the barmaid told him Ora Coleman paid her and Mrs. Coleman never came around the place. Throughout the testimony of Ora Coleman, he referred to the business as his own and his twin brother, Ira, as helping to manage the place. The licensee, Mrs. Coleman, did not testify. The evidence indicated that the sales were made so openly that the person in charge of the place must have been aware of the sales, and that there were other customers present in the place at the hours and on the Sundays that the purchases were made.

"Ora Coleman, Ira Coleman, and Lula May Grant all testified that they did not make any sales to Foster and did not see any sales made to him, and they testified that they knew of no employees named Alice Burton or Pete Maiben."

What is really involved here, as in the companion case, is whether the reviewing court adhered to the rule of deference to findings involving credibility of witnesses made by those before whom the witnesses gave oral testimony. Applying the rule of that case to the facts of this case, we think it apparent that the Supervisor could reasonably have made the order of revocation upon all the evidence before him; and that, upon such record, the circuit court was not authorized to reach the conclusion that the Supervisor's decision was against the weight of the evidence. The judgment is, therefore, reversed. All concur.