**Albert J. LETZ, Supervisor, Division of Liquor Control, Appellant,**

v.

**FAMA, INC., d/b/a Sound Track, Respondent.**

**No. WD 31555.**

Missouri Court of Appeals, Western District.

March 2, 1981.

John Ashcroft, Atty. Gen., Cary Augustine, Asst. Atty. Gen., Jefferson City, for appellant.

James P. George, Kansas City, for respondent.

Before MANFORD, P. J., WASSERSTROM, C. J., and NUGENT, J.

MANFORD, Presiding Judge.

This is an appeal from a circuit court judgment affirming a decision of the Administrative Hearing Commission. The Commission reversed an order of the Supervisor of the Division of Liquor Control, which denied the renewal of a restaurant-bar license. The Supervisor appeals. The judgment is affirmed.

Three points of error are presented on appeal, which in summary allege the trial court erred in affirming the Commission's decision because (1) the evidence was not sufficient to support a finding that respondent had met the requirements for renewal of such license; (2) the Commission incorrectly concluded respondent had presented a prima facie case which shifted the burden of going forward with the evidence to appellant and (3) the Commission erroneously concluded appellant did not rebut a prima facie case established by respondent.

Review of this cause is of the record of the administrative agency and not the circuit court, see *Ingram v. Civil Service Commission*, 584 S.W.2d 633 (Mo.App.1979). Neither this court nor the circuit court can substitute its judgment for that of the agency. Review is limited to the determination of whether the instant agency, the Administrative Hearing Commission, had authority to act in the manner it did and whether or not the finding and order of the agency was supported by competent and

substantial evidence. *Thompson v. Division of Health*, 604 S.W.2d 802 (Mo.App.1980). The authority of the Administrative Hearing Commission is statutory pursuant to § 161.272, RSMo 1978. See also § 161.338, RSMo 1978. The authority of the Commission to sit is not an issue in this appeal. The issue to be determined is whether there was competent and substantial evidence to support the findings and order of the Commission.

Respondent is a corporation whose business consists of a restaurant-bar operation. In May, 1979, respondent applied to appellant for a renewal of its annual license. The issuance of such license is subject to the provisions of § 311.097, RSMo 1978 and 11 C.S.R. 70–2.120(9). Upon review of respondent's application, appellant notified respondent that the license would not be renewed for the licensure year 1979–80. The licensure year is from June to June. On June 22, 1979, respondent filed a complaint and request for review of appellant's decision before the Commission. Following a hearing, the Commission reversed appellant's decision and ordered respondent's license renewed.

■ Prior to considering appellant's alleged errors, it needs to be pointed out that respondent moved to dismiss this appeal for mootness. The argument also challenged appellant's brief for failure to comply with Rule 84.04(d). The argument for mootness was premised upon allegations that pending this appeal, the license year applicable to the instant proceedings would expire. After due consideration by this court, the motion was overruled. This court rules that appellant's brief did not violate Rule 84.-04(d). This court also rules the issue is not *moot because the parties are entitled to a final determination of the issue. State ex rel. Henderson v. Cook*, 353 Mo. 272, 182 S.W.2d 292 (banc 1944) and *Burke v. Coleman*, 356 Mo. 598, 202 S.W.2d 812 (Mo.1947).

As has been mentioned, the type of license appellant sought to renew is autho-

rized by § 311.097, RSMo 1978. This statute is supplemented by 11 C.S.R. 70–2.-120(9). While both the statute and the regulation provide for various requirements, the pertinent portions of both applicable to the instant proceedings are as follows:

" . . . *restaurant bar* means any establishment *having a restaurant or similar facility on the premises at least fifty percent of the gross income of which is derived from the sale of prepared meals or food consumed on such premises.*" (§ 311.097, RSMo 1978, emphasis added)

"(C) Applicants for a restaurant-bar license shall furnish with the application a certified public accountant's certificate showing that at least fifty percent (50%) of the gross income of the restaurant-bar for the past one (1) year . . . " (11 C.S.R. 70–2.120[9]) [1]

While the foregoing regulation contains the requirement that an application shall be accompanied by a certificate from a certified public accountant, there is no evidence upon the record before this court to indicate whether or not a certificate was filed. The only evidence before this court indicated that the application was filed, accompanied by a $200 check and a $2,000 corporate bond. There was also a letter from appellant to respondent, returning the $200 check and the bond and stating that the license would not be renewed. The actual letter is not before this court. The letter, as referenced by both parties, does not clarify whether a certificate was affixed to the application or not. The first finding made by the Commission includes the following language:

"In May of 1979, the Petitioner in the above styled case applied to the Respondent for renewal of its state restaurant bar license. Petitioner's application complied with all the statutory requirements for renewal including a certificate showing that at least fifty percent (50%) of · the gross income of the restaurant bar

---

1. On August 20, 1979, 11 C.S.R. 70–2.120(9)(c) was amended to delete the requirement that the certified statement showing that at least

50% of the gross income of a restaurant-bar for the previous year derived from food sales be prepared by a certified public accountant.

was derived from the sale of food on the premises in accordance with § 311.097, RSMo 1978 and 11 C.S.R. 70–2.120(9)(D)."

The letter to respondent premised the license denial upon appellant's complaint that respondent's records showed that considerably less than 50% of its (respondent's) gross sales were the results of sales of prepared meals or food consumed on respondent's premises.

In this appeal, appellant argues that respondent failed to comply with 11 C.S.R. 70–2.120(9), which requires a certificate from a certified public accountant. Appellant includes this argument within point (2). The record herein, by reference to the letter by both parties and the evidence adduced, dispels appellant's argument on this issue and states that the only issue was whether or not the record supports the Commission's finding that respondent met the requirement of showing that 50% of respondent's gross sales were represented by food sales. It is this issue upon which the Commission made its ruling and the only issue which this court undertakes to review.

As to his first point of error, appellant argues that the evidence did not support the Commission's conclusion that respondent's gross sales met the requirement of 50% food sales. Appellant argues that the evidence demonstrates that the records retained by respondent were incomplete and fraudulent.

In summary, the evidence for appellant consisted of the following facts. Daniel Haar, an auditor for the liquor control department of the city of Kansas City, Missouri, testified that he had audited respondent's books to determine if respondent's city license should be renewed. (The local ordinance also requires that 50% of gross sales be represented by food sales). Haar testified that he reviewed guest checks, register tapes, paid invoices and cancelled checks. Although Haar expressed doubts about the records, he stated that the records were in good condition and showed that sales showed over 50% in food. Haar's doubts dealt with certain food purchases from vendors and the fact that the guest

checks were not signed and the invoices consecutively numbered, although lapses of time existed between the invoices. Haar testified the city license was renewed.

The next witness for appellant was Karen Neutzler, an auditor for the State Division of Liquor Control. This witness testified that she went to respondent's premises and requested to see respondent's books. An unidentified employee refused to tender the books and records. Ms. Neutzler said that she attempted to inventory the foodstuffs at respondent's place of business, the items consisting of a couple of heads of lettuce, a couple of heads of cabbage, a large block of cheese, about ten pieces of cold fried chicken and 25 tortilla shells. After her visit, this witness had contact with the president of respondent corporation when he delivered the books and records of the corporation to her. Ms. Neutzler stated that from respondent's records and receipts, she could not verify the amount of liquor sales and food sales. She stated she did total the sales and determine that the percentage of food sales was 40% and the percentage of liquor sales was 60%. This percentage was primarily derived from purchases by respondent, not from sales by respondent. On direct examination, this witness testified that the records of respondent did not show 50% food sales. However, this witness was quizzed by the Commissioner and this line of questioning proceeded as follows:

"... What I'm interested in is how did you ever make a determination since you've stated that you didn't have the information, that there was not at least 50 percent food sales?

A. All I could do was determine the purchases.

Q. Let me ask you this: Could you make a determination one way or the other?

A. All I could do is recommend.

Q. What I want to know is could you make a determination either way?

A. No."

The purchases referred to above by the witness were purchases made by respon-

dent, not sales by and at its place of business.

Appellant's evidence continued with the calling of two liquor control agents. One agent related the physical arrangements of respondent's business, the prices charged by respondent for beer and mixed drinks and the fact that he attempted to order food but was advised that the kitchen stove was broken and food could not be served that evening. The other agent testified that he went to respondent's location with the auditor, Karen Neutzler. He testified that he observed the kitchen area and the food in the kitchen. He also testified he delivered certain books and records of respondent to the Missouri Highway Patrol. The purpose of turning over these books and records was for forensic examination by laboratory technicians.

The last witness for appellant was a forensic analyst for the Missouri Highway Patrol. It was this witness's testimony that the handwriting on various documents (both sales tickets and invoices billed to respondent) bore the high probability of being written by the same person. He did not identify the person.

Respondent's evidence as summarized consisted of the following facts. The city auditor, Daniel Haar, was called as a witness for respondent. He stated that he made the city audit, presumably from the same records available to appellant, and those records determined that over 50% of sales were food sales. The next witness was the president of respondent corporation. He stated that he prepared the records consisting of daily and monthly expense reports. He stated that the reason the guest checks were in consecutive order was that it was the only way at the end of each day he could tell whether or not a waitress had returned all the guest checks. He said that he purchased meat and produce for the business in cash and that no credit was extended by his suppliers. A profit and loss statement was offered into evidence, and this witness pointed out the food and liquor sales from that statement. This statement showed:

| PERIOD | FOOD | LIQUOR |
|--------|------|--------|
| May 15— June 30 | $16,779 | $17,772 |
| July | 15,870 | 13,829 |
| August | 15,811 | 12,364 |
| Sept. | 14,995 | 11,570 |
| Oct. | 14,414 | 12,380 |
| Nov. | 13,238 | 12,566 |

There had been testimony that respondent's records did not include cash register tapes. This witness (the president) testified that no cash register was used for the food operation but that two registers were used in the bar operation. This witness also testified that food sales were completed by the waitress who payed for the food in the kitchen. Delivery to the patron would occur and the waitress would collect from the patron. This explanation was given to indicate why foodstains and the appearance of use were not found on the guest checks. There were duplicate checks, and this witness testified that this also explained why the checks were in consecutive order. This witness testified that while the greater portion of respondent's food sales were for mexican-type foods, steaks were provided when ordered by patrons. He stated that he contacted the auditor Neutzler and turned over respondent's books and records to her. He also stated that Ms. Neutzler told him there was no way he (meaning respondent) was doing 50% food business. This witness claimed Ms. Neutzler made the statement before looking at the books and records. He stated that the gross sales of respondent were between $275,000/$300,-000. He stated he did not sign the documents referenced in the examination and testimony of the forensic analyst.

The evidence for respondent concluded with the testimony of its accountant. He (the accountant) testified that he kept the records for respondent and that he prepared the documents to accompany respondent's application. He testified that the percentage of food sales was 52.12% to 47% for liquor, and that he prepared the financial data for respondent from information furnished him by respondent. The information

was reviewed in detail by personnel in his office and he oversaw the process for incorrect listings, error, etc.

There had been testimony that respondent's records regarding register tapes showed only the totals. The accountant indicated that the keeping of the total tapes was not a normal practice, although it was preferred by most accountants.

Based upon the foregoing evidence, it cannot be concluded, as appellant argues, that the evidence was not sufficient to support a finding that respondent had met the requirements for license renewal. Point (1) is ruled against appellant.

■ Point (2) alleges that the commission incorrectly concluded that respondent presented a prima facie case, which shifted the burden of going forward with the evidence to appellant.

It is not necessary to restate the evidence, and it suffices to say that if the evidence was sufficient to support a finding by the commission under (1) above, then the evidence certainly supports the conclusion that respondent made out a prima facie case. The only issue on this point is whether appellant was required, as found by the Commission, to go forward and to bear the burden of going forward, with the evidence. This question has been answered by our courts. The case of *State ex rel. State Department of Public Health and Welfare v. Ruble*, 461 S.W.2d 909 (Mo.App.1970) cited by the Commission in its conclusion II dispels appellant's contention. Appellant does not argue against nor challenge the rule under *Ruble*, but elects to reargue the evidence which does not support appellant's positions. See also *Daniels v. Smith*, 471 S.W.2d 508 (Mo.App.1971). For a definition of prima facie evidence, see *State ex rel. State Dept. of Public Health and Welfare v. Hogg*, 466 S.W.2d 167, 170 (Mo.App.1971), cited with approval in *State v. Siecke*, 472 S.W.2d 367, 369 (Mo. banc 1971). Point (2) is ruled against appellant.

■ As to the final alleged error, appellant argues that the prima facie case established by respondent was rebutted by appel-

lant. On this point (3), appellant broadens his argument, contending that even if respondent did make a prima facie case, that would result only in a presumption that respondent complied with the procedural requirements for license renewal. Appellant argues that the substantive issue is whether or not respondent had 50% food sales. Appellant also argues that there is not enough manpower allocated to the Division of Liquor Control to monitor individual sales of over 13,000 liquor establishments in the state and that the only way to insure proper licensing is to require each establishment to keep accurate books of record for purchases and sales. Although no exception can be taken to appellant's general position on this matter, this position overlooks the role and function of this court in the appeal at bar. This court is not authorized, nor equipped, to establish or execute any form of monitoring system for such establishments, but rather, the role of this court is to review the evidence in cases presented to it to determine whether evidence in each case supports the findings and conclusions of the Commission. If the procedures need to be improved or changed, that duty falls to the agency and perhaps the legislature.

Appellant argues that the Commission apparently agreed that appellant had proved the records and books kept by respondent were incomplete and fraudulent. The principal support for this position appears to derive from the Commission's remarks about persuasive testimony of the forensic analyst. This court cannot agree. The record, including the findings and conclusions, never references any finding or conclusion that the Commission believed or found that respondent's records were incomplete or fraudulent. What the Commission did note with great detail was the failure of appellant's auditor to determine and be able to testify that respondent was not making the required 50% food sales.

The record shows that appellant did not rebut the case made by respondent, and upon appellant's failure, the Commission was correct in its finding that appellant

failed to carry its burden as to the evidence. Point (3) is ruled against appellant.

The record herein shows the Commission acted within its statutory authority and that there was competent and substantial evidence to support the findings, conclusions and order entered by the Commission.

For the reasons set forth herein, the judgment is in all respects affirmed.

All concur.