UPPER GEORGIA AVENUE
PLANNING COMMITTEE,
Petitioner,

v.

ALCOHOLIC BEVERAGE CONTROL
BOARD, Respondent,

K.G.S., Inc., trading as Shepherd Park
Restaurant, Intervenor.

No. 84–115.

District of Columbia Court of Appeals.
Argued May 15, 1985.
Decided Nov. 15, 1985.

988

Gay Gellhorn, Washington, D.C., for petitioner. James Robertson, Washington, D.C., was on the brief, for petitioner.

Karen J. Krueger, Asst. Corp. Counsel, with whom Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Deputy Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Robert R. Redmon, Washington, D.C., for intervenor. Stuart L. Bindeman and Douglas S. Stone, Washington, D.C., were on the brief, for intervenor.

Stephen J. O'Brien and Daniel Healey, Washington, D.C., filed a brief, for amicus curiae, Washington, D.C., Restaurant and Beverage Ass'n.

Before MACK, FERREN, and TERRY, Associate Judges.

TERRY, Associate Judge:

■ Petitioner, the Upper Georgia Avenue Planning Committee (UGAPC), seeks review of an order of the District of Columbia Alcoholic Beverage Control Board (the Board), granting K.G.S., Inc., a renewed liquor license for its restaurant. Petitioner advances three arguments for reversal. First, it contends that the Board erred in ruling that it was not required under D.C. Code §§ 25–103(14) (1981) and 25–111(a)(7) (1985 Supp.) to make a finding that the sale of meals and not beverages was the restaurant's "chief source of revenue" before it could renew the restaurant's liquor license; second, it maintains that the Board's finding that the location of the restaurant was appropriate was not supported by substantial evidence; third, it argues that the Board erred by failing to give great weight to the recommendation of the Advisory Neighborhood Commission. We disagree with the second and third contentions, but we agree with the first. Accordingly, we affirm the Board's order in part, reverse it in part, and remand the case for further proceedings, including a factual finding, with respect to the restaurant's chief source of revenue.[1]

I

In 1982 K.G.S., Inc., the intervenor, filed an application with the Board to renew the existing Class C liquor license for the Shepherd Park Restaurant, which features nude female "exotic" dancers for the entertainment of its patrons. The renewal was opposed by UGAPC, a group of local businessmen and residents which was organized to improve the neighborhood in which its members live and work.

A hearing on the renewal application was held on February 16, 1983, before a three-member panel of the Board. Testimony was presented by several witnesses, including one of the two stockholders of K.G.S., Inc., an investigator for the Board, a police officer who had conducted an investigation of the restaurant, four members of UGAPC, and representatives of other local citizens' groups. The principal objection of those who testified in opposition to the renewal was to the nudity of the dancers. They also cited incidents in which restaurant patrons had harassed neighborhood residents and had been seen urinating in public, as well as parking problems, as further grounds for denying renewal of the license. Testimony in support of the renewal focused primarily on recent improvements to the restaurant and on actions taken to resolve the problems cited by the opposing witnesses.

■ In December 1983 the Board issued an order granting the application for renewal of the license. After various addi-

1. Petitioner also contends that the restaurant does not qualify as a restaurant under D.C. Code § 25–103(14) (1981) because the exotic dancing which takes place there is a business that is not "incidental to a bona fide restaurant." This issue, however, was not raised before the Board. In fact, when petitioner quoted the statutory definition of a restaurant in its memorandum in support of its proposed findings before the Board, it excluded that portion of the definition relating to incidental businesses, apparently believing that it had no bearing on the case. We therefore decline to consider the issue now. *John D. Neumann Properties, Inc. v. District of Columbia Board of Appeals and Review,* 268 A.2d 605, 606 (D.C.1970); *accord, Smith v. Police and Firemen's Retirement and Relief Board,* 460 A.2d 997, 999 (D.C.1983).

tional proceedings, including a remand from this court to enable the Board to revise its findings, the case is now before us for a decision on the merits.[2]

## II

Petitioner's main argument in this court is that the Board erred in ruling that it may renew a Class C liquor license for a restaurant without making a finding that the restaurant's chief source of revenue is from the sale of meals and not beverages. We agree.

Under D.C. Code § 25–111(a)(7) (1985 Supp.), a Class C license "shall be issued only for a bona fide restaurant...." Although the Code does not define "bona fide restaurant," it does define "restaurant" as follows:

The word "restaurant" means a suitable space in a suitable building, approved by the Board, including such suitable space outside of the building and adjoining it as may be approved by the Board, kept, used, maintained, advertised, or held out to the public to be a place where meals are served, such space being provided with such adequate kitchen and dining room equipment and capacity, and having employed therein such number and kinds of employees for preparing, cooking, and serving meals for its guests *as shall satisfy the Board that such space is intended for use primarily as a place for preparing, cooking, and serving meals, and that the chief source of revenue to be derived from the operation of such place shall be from the preparation, cooking, and serving of meals and not from the sale of beverages.* No such space shall be considered suitable if any business is conducted therein other than the preparation, cooking, and serving of meals,

except such a business as is incidental to a bona fide restaurant.

D.C. Code § 25–103(14) (1981) (emphasis added).

■ Although the syntax is awkward, the intent of the statute is plain. The Board may not find that a place is a restaurant (and thus it may not issue a license to an establishment claiming to be a restaurant) until it is "satisf[ied]" of two things: first, that the place is intended to be used primarily as a place for cooking and serving meals, and second, that the chief source of revenue is from the sale of meals, not beverages. In this case, however, the Board ruled that the Shepherd Park was a restaurant without ever making a finding on the second point. The Board explained:

The District of Columbia Corporation Counsel has stated that the majority of an alcoholic beverage control licensed restaurant's revenues need not be derived from the sale of food. In an opinion dated [January] 26, 1956, the Corporation Counsel ruled that the Board must [only] be satisfied that it is the intent of the Applicant to sell food and meals.

*See* Op. Corp. Counsel at 2 (January 26, 1956) ("the Board must be satisfied that the space is intended for use, broadly speaking, as a bona fide restaurant"). "[I]n the absence of specific action by the [Mayor] or Council to the contrary, or until overruled by controlling court decision," the Board was entitled to rely on that opinion as a "guiding statement of law...." Reorganization Order No. 50, D.C. Code Title 1 App. at 180 (1973). We now hold, however, that both the Corporation Counsel's opinion and the Board's ruling based upon it are erroneous because they are contrary to the plain meaning of the statute. *See Jordan v. District of Columbia,* 362 A.2d 114, 118 (D.C.1976). We must give effect to the legislative intent insofar

---

**2.** UGAPC has filed protests in this case regarding the renewal of the license for both the 1982–1983 and the 1983–1984 licensing years, but it has not opposed the renewal for 1984–1985. Nevertheless, the case is not moot, because our decision can have an impact on the

restaurant's current status. If we conclude that the Board erred in granting the 1982–1983 renewal, the current license must be held void. *See Kopff v. District of Columbia Alcoholic Beverage Control Board,* 381 A.2d 1372, 1377–1378 (D.C.1977).

as we can discern it from the statutory language. *See Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc); *Varela v. Hi-Lo Powered Stirrups, Inc.*, 424 A.2d 61, 64–65 (D.C.1980) (en banc) (citing cases).

■ Because the legislative intent in this instance is clear, we hold that the Board must find that "the chief source of revenue" of any establishment claiming to be a restaurant "shall be from the preparation, cooking, and serving of meals and not from the sale of beverages." D.C. Code § 25–103(14) (1981). We leave it to the Board, in the first instance, to determine whether "the chief source of revenue" means that a particular amount or percentage of revenue must be derived from the sale of food rather than beverages. We also leave it to the Board to determine, as a matter within its regulatory expertise, the period of time for which the chief-source-of-revenue calculation shall be made.[3] Any such determination, of course, will be subject to review by this court, either in this case (if it comes back to us) or in some future case involving a different applicant.

■ Because the Board failed to make the necessary finding that the chief source of the Shepherd Park Restaurant's revenue is from the sale of food and not beverages, we must reverse the decision of the Board and remand for further proceedings on that issue, and for the entry of an appropriate finding. In addition to the factors listed in section 25–103(14) (adequate kitchen equipment, number and kinds of employees, etc.), the Board is free to consider any relevant evidence in determining the chief source of revenue, including such items as cash register tapes, canceled checks, and paid invoices. *See generally Letz v. Fama, Inc.*, 613 S.W.2d 190 (Mo.Ct.App.1981). Of course, the Board is not free to disregard the statutory criteria and base its finding on a mere promise by the applicant to make its chief source of revenue the sale of meals rather than beverages; hard evidence is required, not promises or good intentions. *See Washington Press Club v. District of Columbia Alcoholic Beverage Control Board*, 476 A.2d 1107, 1110 (D.C. 1984).

### III

Petitioner next contends that the Board's finding that the location of the Shepherd Park Restaurant was "appropriate" was not supported by substantial evidence. It cites the complaints about the nude dancers, the patrons' disorderly conduct, and the parking problems associated with the restaurant as evidence of the inappropriateness of its location. There is abundant evidence in the record on both sides of the issue.

■ Under D.C. Code § 25–115(a)(6) (1985 Supp.), before the Board may issue a license, it must satisfy itself "[t]hat the place for which the license is to be issued is an appropriate one considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired." Its decision to grant or deny a license application must meet the three-part test which we have established for contested cases:

(1) [T]he decision must state findings of fact on each material, contested factual issue; (2) those findings must be based on substantial evidence; and (3) the conclusions of law must follow rationally from the findings.

*Perkins v. District of Columbia Department of Employment Services*, 482 A.2d 401, 402 (D.C.1984); *accord, Donnelly v. District of Columbia Alcoholic Beverage Control Board*, 452 A.2d 364, 366 (D.C.

---

3. We recognize that ascertaining what sums are attributable to the sale of food rather than beverages may present some difficult accounting problems. The business may yield different ratios from week to week or from season to season, and there may be occasional periods—major holidays, for example—when a restaurant attracts an abnormal number of drinkers rather than eaters. The Board will have discretion to decide what weight to give to such factors as these, so long as it makes the ultimate finding as to "the chief source of revenue."

1982); *Foggy Bottom Ass'n v. District of Columbia Alcoholic Beverage Control Board,* 445 A.2d 643, 645 (D.C.1982); *Citizens Ass'n of Georgetown v. District of Columbia Zoning Commission,* 402 A.2d 36, 42 (D.C.1979). We must uphold the Board's decision so long as it is supported by substantial evidence, even though there may also be substantial evidence to support a contrary decision, as there is in this case. *See Haight v. District of Columbia Alcoholic Beverage Control Board,* 439 A.2d 487, 495 (D.C.1981); *Spevak v. District of Columbia Alcoholic Beverage Control Board,* 407 A.2d 549, 554 (D.C.1979).

■ Petitioner first argues that the restaurant's use of nude go-go dancers makes its location inappropriate to the "stable, traditional, family-oriented community" in which it is located. The Board found, however, that the dancing was not illegal under applicable zoning regulations,[4] and therefore it could not be used as a basis for finding the location inappropriate. The Board's ruling was correct as a matter of law. *4934, Inc. v. Washington,* 375 A.2d 20 (D.C.1977); *accord, D.T. Corp. v. District of Columbia Alcoholic Beverage Control Board,* 407 A.2d 707, 708 (D.C. 1979).

■ Second, petitioner maintains that the disorderly behavior of the restaurant patrons has made the location inappropriate. It cites testimony regarding several incidents in which some patrons harassed neighborhood residents and were seen urinating in public. The Board found, however, that the owners of the restaurant have sought to alleviate these problems by hiring an off-duty police officer to patrol the outside of the premises. Moreover, the Board noted that its investigator did not find any evidence of such activity in his several visits to the restaurant. We rejected a similar argument, on a comparable

record, in *Donnelly v. District of Columbia Alcoholic Beverage Control Board, supra,* 452 A.2d at 369. We hold that *Donnelly* is dispositive here. *See also Citizens Ass'n of Georgetown v. District of Columbia Alcoholic Beverage Control Board,* 410 A.2d 197, 200–201 (D.C.1979) (upholding Board's finding of appropriateness when the licensee had made efforts to eliminate kitchen odors, noise, trash, and parking problems).

■ Finally, petitioner challenges the Board's ruling with respect to the parking problems allegedly caused by the restaurant's patrons. Petitioner argues that the restaurant's thirty parking spaces cannot be sufficient for its twenty-five employees and all of its patrons, since it has a seating capacity of approximately ninety-six persons. However, petitioner cites no evidence showing how many employees work at the same time, whether they drive their cars to work, or whether the restaurant has ever been filled to capacity. Moreover, the Board pointed out that on several occasions its investigator had checked the parking lots in the surrounding area and found a sufficient number of parking spaces. The investigator also spoke with the manager of a nearby restaurant, who stated that there were no parking problems. The Board noted in addition that the investigator had "made additional visits to the premises during different hours of the evenings and early mornings and found no violations outside of the premises in and around the parking lots." On this record we are satisfied that there was substantial evidence to support the Board's decision on the parking issue. *See Haight v. District of Columbia Alcoholic Beverage Control Board, supra,* 439 A.2d at 494–495 (upholding Board's finding of

---

**4.** A 1977 amendment to the District of Columbia Zoning Regulations prohibited "sexually-oriented business establishments" from operating in areas zoned C–2–A, which is the restaurant's zoning classification. The restaurant apparently meets the definition of a "sexually-oriented business establishment." *See* 11 DCMR § 199.9 (1984). However, because the restaurant has offered nude dancing since 1976, the 1977 amendment does not affect it; it was, as the Board found, "grandfathered in as a sexually-oriented business in a C–2–A zone."

appropriateness despite allegations of parking problems).[5]

## IV

Petitioner's last claim of error is that the Board failed to accord "great weight," as it is required to do by statute, to the views expressed by the local Advisory Neighborhood Commission (ANC). We hold that the Board fully complied with the statute.

■ Under D.C. Code § 1–261(a) (1981), each ANC is given the responsibility to advise the Mayor and agencies of the District of Columbia government with respect to a variety of issues that affect its area. Section 1–261(d) provides that "[t]he issues and concerns raised in the recommendation of the commission shall be given great weight during the deliberations by the governmental agency...." This means simply that the Board must carefully consider the ANC's recommendations. So long as the Board makes "explicit reference to each ANC issue and concern *as such*, as well as specific findings and conclusions with respect to each," it meets the requirements of section 1–261(d); it is not obliged to follow the ANC's recommendations or adopt its views. *Kopff v. District of Columbia Alcoholic Beverage Control Board, supra* note 2, 381 A.2d at 1384 (emphasis in original); *accord, Gerber v. District of Columbia Alcoholic Beverage Control Board,* 499 A.2d 1193, 1197–1198 (D.C.1985); *Donnelly v. District of Columbia Alcoholic Beverage Control Board, supra,* 452 A.2d at 367; *Spevak v. District of Columbia Alcoholic Beverage Control Board, supra,* 407 A.2d at 555.

■ In this case ANC 4–B at first took no position, but later it decided to oppose renewal of the license because of the nude dancing, the disorderly behavior of the patrons, and the parking problems.[6] The Board expressly took note of these concerns and rejected them for reasons which it stated in its decision. This was all that section 1–261(d) required it to do. We hold, therefore, that the Board fulfilled its statutory duty in this respect.[7]

5. Petitioner also contends that the Board erred in failing to consider adequately the views of neighborhood residents, particularly those who did not live in the immediate area of the restaurant. Although it could have disregarded entirely the views of such persons, *Donnelly, supra,* 452 A.2d at 367 n. 7, the record makes clear that it did not do so. In the same vein, petitioner argues that the Board's findings implied that the community was not predominantly opposed to the license renewal and that this was error because the Board refused to hear unduly repetitious testimony. We find no such implication in the Board's decision; on the contrary, the Board expressly noted that "many more persons were prepared to give repetitious evidence" and that petitions containing more than 900 signatures were submitted in opposition to the application.

6. ANC 4–B represents the neighborhood in which the Shepherd Park Restaurant is located. Petitioner argues that the Board should also have given great weight to the views of ANC 4–A, which represented a nearby neighborhood. D.C. Code § 1–261(a) (1981) provides that each ANC may advise the Board on issues "which affect that commission area." Petitioner reads this language broadly to give any ANC that may remotely be affected by action taken in an adjacent neighborhood the right to have its views taken into account. Although we are not persuaded that the statute should be so construed, we need not decide the point because we are satisfied that, if there was error, it was harmless. Since ANCs 4–A and 4–B both made the same objections to the renewal, the Board necessarily considered the views of ANC 4–A when it considered those of ANC 4–B.

7. Petitioner makes one additional argument which is entirely without merit. It contends that the Board's action in amending its findings was arbitrary and capricious, citing *Food Marketing Institute v. ICC,* 190 U.S.App.D.C. 388, 587 F.2d 1285 (1978). In that case the court held that it must apply "a somewhat greater degree of scrutiny than might otherwise be appropriate" to an agency order which "reaffirmed a decision that itself departed drastically from [an earlier order in the same case]." *Id.* at 392–393, 587 F.2d at 1289–1290. It was this departure from precedent that had led to a remand from the Court of Appeals for a fuller explanation of the agency's reasoning. But the court did not hold the post-remand order to be arbitrary and capricious; in fact, it found the order to be well reasoned and affirmed it. The *Food Marketing* case is sufficiently different from the case at bar to be of no help to us here, and in any event there is nothing in it that would lead us to conclude that the Board erred in amending its findings.

## V

Because the Board failed to make a finding that the restaurant's "chief source of revenue" was the sale of meals rather than alcoholic beverages, we reverse the order granting the application for renewal of its license and remand the case for further proceedings with respect to that issue, and for the entry of a new final order. In all other respects we affirm the Board's findings and conclusions.

*Affirmed in part, reversed in part, and remanded.*