**K.G.S., INC., T/A Shepherd Park Restaurant, Petitioner,**

v.

**DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, Respondent,**

**Upper Georgia Avenue Planning Committee, Intervenor.**

No. 87–27.

District of Columbia Court of Appeals.

Argued July 1, 1987.
Decided Oct. 8, 1987.

John R. Risher, Jr., Washington, D.C., with whom Robert R. Redmon, Bethesda, Md., was on the brief, for petitioner.

Edward E. Schwab, Asst. Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, and Karen S. Dworkin, Asst. Corp. Coun-

sel, Washington, D.C., were on the brief, for respondent.

Gay Gellhorn, with whom James Robertson, Washington, D.C., was on the brief, for intervenor.

Before BELSON, TERRY and STEADMAN, Associate Judges.

BELSON, Associate Judge:

██ This is a petition for review of an order of the Alcoholic Beverage Control Board ("the Board") denying renewal of a Class C retailer's liquor license, D.C. Code § 25–111(a)(7) (1981 & 1986 Supp.) (amended 1987), to K.G.S., Inc., trading as Shepherd Park Restaurant.[1] Shepherd Park makes three principal arguments. First, it contends that the Board's findings of fact and its conclusion that Shepherd Park is not "appropriate" for its neighborhood, as that term was used in former D.C.Code § 25–115(a)(6) (1986 Supp.) (current version at § 25–115(b) (1987 Supp.)), are unsupported by substantial evidence. Alternatively, petitioner argues that the criteria contained in former D.C.Code § 25–115(a)(6), in effect at the time of its application hearing, applied only to Board decisions on whether to grant initial liquor

licenses, not to renewals of liquor licenses. Finally, petitioner assails the Board's decision as having been motivated by unconstitutional considerations, such as the race and residency of Shepherd Park's patrons. We find these contentions unpersuasive, and therefore affirm.[2]

Shepherd Park is an establishment located at 7815 Georgia Avenue, N.W., in the District of Columbia. It serves food and alcoholic beverages to its patrons, and features nude female dancing every day, usually from lunchtime until it closes at 2 a.m. weekdays and 4 a.m. on weekends. Shepherd Park is located a few hundred feet from the Maryland border on a major traffic artery between the District of Columbia and Maryland. There is a Presbyterian church across the street; a Roy Rogers restaurant next door; a catering service and restaurant, Blair Mansion Inn, nearby; and an elementary school four to five blocks away. There is also a substantial amount of residential housing nearby.

Petitioner's primary challenge to the ruling below is that the Board's determination that petitioner failed to meet the criteria contained in former D.C.Code § 25–115(a) (1986 Supp.) is unsupported by substantial evidence.[3] That statute provided that be-

---

1. This is the second time that Shepherd Park's liquor license renewal application has reached this court. In the first case, *Upper Georgia Avenue Planning Committee v. Alcoholic Beverage Control Board,* 500 A.2d 987 (D.C.1985), this court remanded to the Board for a determination of whether Shepherd Park is a bona fide restaurant within the meaning of the law. *Id.* at 990–91. On remand, the Board determined that the District of Columbia Council had removed that issue from its jurisdiction. D.C. Act 6–215, 33 D.C.Reg. 6740, 6740–41 (1986) (emergency legislation expiring Jan. 12, 1986). That determination is not challenged by any of the parties to the instant case, and we do not address it here.

2. Shepherd Park also contends that the Board erred in refusing its request to examine for impeachment purposes the notes of a detective who conducted an undercover investigation of drug trafficking activities at Shepherd Park by its employees and patrons. Petitioner relies on the Jencks Act, 18 U.S.C. § 3500 (1982). While that Act, by its terms, does not apply to administrative proceedings, the principles of fair play that led to its enactment do apply to such proceedings. *Communist Party of the United States v. Subversive Activities Control Bd.,* 102 U.S.App.

D.C. 395, 408–09, 254 F.2d 314, 327–28 (1958). The Board erred in failing to allow petitioner's counsel to examine the detective's records since petitioner made a timely request for the detective's notes, the detective indicated that he had taken contemporaneous notes and written reports concerning the matters he observed and about which he testified, and the detective's testimony was material to the issues before the Board. However, because testimony by another police officer and several other witnesses corroborated the detective's testimony concerning alleged drug activity at Shepherd Park, on this record we find this error not sufficiently prejudicial to petitioner to require reversal. *See* D.C. Code § 1–1510(b) (1987).

3. Subsumed within its argument that the Board's decision is unsupported by substantial evidence is its claim that the Board's decision is irrational and arbitrary since the Board previously found Shepherd Park appropriate for its location, *see Upper Georgia Ave. Planning Comm., supra,* 500 A.2d at 991–92, and since the Board did not explain in its current ruling why it had changed its view as to the appropriateness of Shepherd Park. Because the record of the previous hearing before the Board is not before

fore issuing a license, the Board must satisfy itself that "the place for which the license is to be issued is an appropriate one considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired." *Id.* Pursuant to D.C. Code § 1–1510(a)(3)(E) (1987), this court reviews decisions of the Board according to the substantial evidence test. Under that standard of review, this court must uphold the Board's conclusion if it is supported by substantial evidence, even though there may also be substantial evidence to support a contrary conclusion. *Upper Georgia Ave. Planning Comm., supra,* 500 A.2d at 992.

■ After reviewing the record of the evidentiary hearing before the Board, we conclude that the Board's decision that Shepherd Park is inappropriate for its neighborhood is supported by substantial evidence. There was testimony at the hearing that Shepherd Park patrons have engaged in public urination, drinking and discarding trash in the adjacent parking lot, and accosting persons in cars that had stopped outside the premises. There was testimony that, between the hours of 10 p.m. and 2 a.m., the police receive more emergency ("911") calls reporting disorderly conduct involving Shepherd Park than any other address in the area. The Board also heard testimony that Shepherd Park serves patrons who are intoxicated,[4] ejects drunk patrons into the neighborhood, and

has served at least one under-age individual.[5] Police officers testifying at the hearing informed the Board that several cocaine sales had been observed on the premises of Shepherd Park. Furthermore, approximately 1,300 of Shepherd Park's neighbors signed a petition opposing its license renewal application. Although there was also testimony, cited by the Board in its findings, that Shepherd Park had made efforts to reduce the problems resulting from the activities of its patrons outside the establishment, the Board's determination that Shepherd Park continued to have a negative and destructive impact on the community and therefore is not appropriate within the meaning of the statute is amply supported by the record.[6]

■ We turn to the question whether the "appropriateness" test of former D.C.Code § 25–115(a) applied to an application for renewal of a liquor license, or whether that provision applied only to initial applications for liquor licenses.[7] That statute provided that "[a]ny individual, partnership, or corporation desiring a license" must show certain things, including "(6) That the place for which the license is to be issued is an appropriate one...." D.C.Code § 25–115(a) (1986 Supp.) (amended 1987). Thus, the statute made no mention of whether it applied only to new applications for licenses or whether it also applied to applications for a transfer of a liquor license or for renewal of a liquor license. With respect to this point, the statute was ambiguous.[8]

---

the court in this case, we decline to consider this argument and rule solely on the record before us in the instant case.

4. *See* D.C.Code § 25–121(a) (1986 Supp.) (amended 1987).

5. *Id.*

6. Petitioner challenges subsidiary facts as well as the Board's conclusion that Shepherd Park is inappropriate for that neighborhood. Each of the Board's findings has ample testimony to support it, either from the police officers who conducted the undercover narcotics investigation, protestants who visited Shepherd Park and testified to what they observed, or from Shepherd Park employees. Certain minor mistakes in the wording of the Board's findings to which

petitioner refers appear to be, at worst, harmless errors. *See* D.C.Code § 1–1510(b) (1987).

7. This issue was not raised before the Board until petitioner moved for reconsideration after the Board issued the ruling challenged in this case. Neither intervenor Upper Georgia Avenue Planning Committee nor respondent, however, has argued that this issue is not properly before this court.

8. The District of Columbia Council, in amending § 25–115, recently resolved this ambiguity, providing specifically that a finding of appropriateness is required for applicants "for issuance, transfer, *or renewal* of a license." D.C. Alcoholic Beverage Control Act Reform Amendment Act of 1986, D.C.Law No. 6–217, 34 D.C.Reg. 907, 919 (1987), D.C.Code § 25–115(b)(1) (1987

Because the statute was ambiguous, this court may look at its legislative history to determine whether Congress intended its criteria to apply to license renewals. *See Davis v. United States,* 397 A.2d 951, 956 (D.C.1979); 2A SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 45.02 (4th ed. 1984). The legislative history indicates that in 1934, in considering legislation to allow a majority of property owners within 600 feet of a place for which a liquor license is sought to veto the license, Congress amended the proposed provision to apply only to initial applications for liquor licenses.[9] 78 CONG.REC. 292 (1934); *see* District of Columbia Alcoholic Beverage Control Act, Pub.L. No. 73–85, § 14(c), 48 Stat. 319, 329 (1934) (current version at D.C.Code § 25–115(e) (1987 Supp.)). Representative Boileau noted that owners of property in the neighborhood where the licensee was located would continue to be protected after the issuance of an initial liquor license by the provision "which provides that the place for which the license is to be issued must be an appropriate one, considering the character of the premises, its surroundings, and the wishes of the persons residing or owning property in the neighborhood of the premises for which the license is desired." 78 CONG.REC. 292 (1934) (statement of Rep. Boileau). The legislative history therefore shows clearly that Congress intended the appropriateness test of former D.C.Code § 25–115(a)(6) to apply to a subsequent application for renewal of a liquor license.

This court's decisions also have suggested, although they have not squarely decided, that the appropriateness test applied to an application for renewal of a liquor license as well as to an original liquor license application. The principal such case is *LCP, Inc. v. District of Columbia Alcoholic Beverage Control Board,* 499 A.2d 897 (D.C.1985). In *LCP,* the court affirmed the Board's denial of petitioner's application for renewal of a liquor license on the ground that the establishment was inappropriate for the neighborhood because it generated, *inter alia,* excessive noise, litter, vandalism, public urination and defecation, illegal parking, and, consequently, neighborhood opposition. *Id.* at 904–05. Although there were several issues concerning the proper interpretation of former D.C.Code § 25–115(a)(6) presented in that case, petitioner LCP apparently did not contest the application of that subsection to its renewal application, and the court applied it without discussion.

This court also made brief mention of this issue in *D.T. Corp. v. District of Columbia Alcoholic Beverage Control Board,* 407 A.2d 707 (D.C.1979), in which the court found unpersuasive the petitioner's argument, made without citing any authority, "that neighborhood residents might be estopped from protesting reissuance or transfer of a license by their prior silence." *Id.* at 708. Since the court remanded the case to the Board because of an unrelated flaw in its analysis, *id.* at 710, the foregoing statement is not part of the holding of the case. In his concurring opinion in *D.T. Corp.,* Judge Newman discussed the various criteria used by the

---

Supp.) (emphasis added). The legislative history of this amendment further supports our conclusion that the previous version of the statute, which we construe here, applied to license renewal as well as to issuance. In discussing the appropriateness requirement, the committee report described the amendment as being "an elaboration of the requirement of current law," and indeed, characterized former § 25–115(a)(6) as having required the Board to determine appropriateness "before issuing *or renewing* a license." COMMITTEE ON CONSUMER & REGULATORY AFFAIRS, DISTRICT OF COLUMBIA COUNCIL, 6TH SESS., REPORT ON BILL 6–504, THE DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL ACT REFORM AMENDMENT ACT OF 1986, at 10, 37 (1986) (emphasis added).

9. We note that a recent opinion of this court, *Hornstein v. Barry,* 530 A.2d 1177 (D.C.1987), invalidated a provision of the Rental Housing Conversion and Sale Act, D.C.Code § 45–1601 *et seq.* (1981), which, by requiring a majority of tenants in a building to consent to its conversion into condominiums, unconstitutionally delegated a legislative function to a narrow segment of private citizens. At 1185. We express no opinion as to *Hornstein*'s applicability to the 600–foot veto provision of the Alcoholic Beverage Control Act. In any event, that question is not presented in this case, as the veto procedure was never invoked in this proceeding.

Board in determining whether an applicant was appropriate to receive a grant, renewal, or transfer of a liquor license pursuant to former D.C.Code § 25–115(a)(6). *Id.* at 712–13 (Newman, J., concurring).

Therefore, although this issue has never been directly addressed by the court, the implication of our prior decisions is that the appropriateness test of former § 25–115(a)(6) applied to license renewal cases. *See also Citizens Ass'n v. Simonson,* 131 U.S.App.D.C. 152, 153, 403 F.2d 175, 176 (1968) (per curiam) (in deciding that neighbors of restaurant have standing to challenge renewal of liquor license, court implies that neighborhood preference applies to renewal cases), *cert. denied,* 394 U.S. 975, 89 S.Ct. 1454, 22 L.Ed.2d 775 (1969).

Turning to municipal regulations, we find none that set out the criteria applicable to liquor license renewals. The regulations do provide, however, that the Board is to make findings on the appropriateness of an establishment for its location in deciding whether to grant an application for an *initial* liquor license or for the *transfer* of an existing liquor license to a new location. 23 DCMR § 1024.4 (1986). By omission, therefore, the regulations provide some support for petitioner's view that appropriateness is not a proper subject for the Board to consider with respect to the *renewal* of a license. On balance, however, given this court's prior application of the appropriateness standard to liquor license renewal applications and Congress' clear intention to have the Board determine whether the place for which renewal of a liquor license is sought remains appropriate for the neighborhood in which it is located, we find no error in the Board's practice of applying former D.C.Code § 25–115(a)(6) to renewal applications.

Petitioner's final argument is that the proceeding before the Board was fatally flawed by a Board member's questioning of a witness concerning unconstitutional considerations, such as the race and residency of Shepherd Park's patrons. We agree with petitioner that there was some inappropriate questioning of a witness about irrelevant matters, including the race

and residency (District of Columbia, Maryland, or Virginia) of Shepherd Park's patrons. But the Board in no way relied upon, or even mentioned, this testimony in its findings of fact. Furthermore, the testimony produced was so vague as to be almost useless, even if race and residency had been relevant considerations. The witness, an off-duty police officer who works weekend evenings as a security guard at Shepherd Park, testified only that there was a mix of cars from the three jurisdictions, and that Shepherd Park's patrons were more than sixty per cent white, but that the number of blacks and Hispanics had been increasing lately. No one testified concerning the racial mix of the neighborhood in which Shepherd Park is located. The Board erred in allowing one of its members to elicit testimony concerning race and residency of Shepherd Park's patrons from a witness at the hearing. But because there was no reliance by the Board on this testimony in its findings of fact and conclusions of law, we find no reversible error.

*Affirmed.*