Carlos M. RECIO, et al., Petitioners,

v.

DISTRICT OF COLUMBIA ALCO-HOLIC BEVERAGE CONTROL BOARD, Respondent.

No. 12–AA–292.

District of Columbia Court of Appeals.

Argued April 10, 2013.
Decided Aug. 22, 2013.

---

Carlos M. Recio, Washington, DC, for petitioners.

James C. McKay, Jr., Senior Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for Respondent.

Before WASHINGTON, Chief Judge, McLEESE, Associate Judge, and BELSON, Senior Judge.

BELSON, Senior Judge:

Petitioners Carlos Recio, Timothy Casey, Rachel Casey, John Thompson, Kelsey Thompson, and the National Community Church, ("Petitioners"), seek review of an order of the District of Columbia Alcoholic Beverage Control Board ("the

Board") dismissing their protest of the application for the liquor license renewal of the 7th and L Street Market ("the Market"). The Board determined that petitioners, who were protesting the renewal of a liquor license, had ample notice that the Board required at least five members of the protest group to appear before it at either the roll-call hearing or the status hearing in order to be granted standing, and that yet Recio appeared at both without any additional group members. On the basis of those facts the Board dismissed petitioners' protest. We reverse the Board's order, holding that the Board abused its discretion by denying at the same status hearing petitioners' written motion for clarification or waiver of the requirement that at least five protestants appear in person at the status hearing,[1] denying petitioners' motion for time to arrange for the presence of at least five protestants at a continued hearing, and then voting to dismiss the protest. We reject, however, petitioners' argument that the Board violated the District of Columbia Administrative Procedure Act ("DCAPA")[2] by consistently requiring, without having first engaged in rulemaking, that at least five individual members of a protesting group appear in person at a single hearing in order to gain standing to participate in licensure proceedings.

## I.

On September 20, 2011, the 7th and L Street Market (the Market) at 700 L Street, Southeast, applied to renew its liquor license. Notice was published at the

---

1. Petitioners' motion was captioned as a motion for "clarification" as it sought to have the Board clarify that personal appearance of the individual protestants was not required, and was in effect a motion for waiver of that requirement. *See Taylor v. United States*, 759 A.2d 604, 609 (D.C.2000) ("The nature of a motion is determined by the relief sought and not by its caption or what a party represents the motion to be." (citations omitted)).

2. D.C.Code §§ 2–501–510 (2011) *formerly* §§ 1–1501–1510.

premises, and on November 12 and 14, 2011, Recio submitted protest letters on behalf of himself and other residents of property within the immediate neighborhood of the Market. The Board sent letters to each protestant providing notice that a roll-call hearing was scheduled for November 28, 2011, and stating: "You must appear for the Roll Call Hearing in person or provide a written statement designating a representative who must appear for the hearing on your behalf." Each of the other protestants designated Recio in writing as their named representative. At the roll call hearing, Agent Laverne Fletcher told Recio that "your group does have standing as a protestant, by the fact that you are here today and you have been designated to represent the group." However, she also stated that "[a]t the status hearing, four of the others will need to appear." Recio asked that the requirement be waived, and said that he would file a motion if he had to. Agent Fletcher responded "that won't be waived" (apparently meaning that it would not be waived at that time), but that he could "petition the Board to waive that requirement."

On December 1, 2011, petitioners received letters from the Board that a status hearing was scheduled for January 18, 2012. The letter stated that "[i]f the requisite number of individuals is not present, the Board may dismiss the protest." On January 6, 2012, petitioners filed a petition seeking waiver, styled a motion for "clarification," asking the Board to make it clear that the protestants could appear through their designated counsel and that the individual protestants were not required to appear at any hearing.

The Alcoholic Beverage Regulation Administration's ("ABRA") Deputy General Counsel, Thea Davis, responded to Recio via e-mail, and informed him that the motion would be heard on January 18, 2012,

the same day as the status hearing. Ms. Davis also told Recio that Agent Fletcher's instruction that at least five people must appear is consistent with 23 DCMR § 1605.4 (2008), and thus four more individuals "must appear at the Status Hearing or your protest will be dismissed." Recio responded by e-mail and argued, *inter alia*, that the Board's position is inconsistent with the DCAPA. Ms. Davis replied that the requirement for five individuals to appear in person is within the Board's discretion "as indicated by the term 'may,'" referring to the language of 23 DCMR § 1605.4. Ms. Davis stated, "[a]s a final reminder, your clients' protest may be dismissed by the Board if at least four more individuals do not appear at the Status Hearing." Recio then asked for information regarding a request for continuance of the status hearing that had been made at the mediation held on December 11, 2011, by counsel for the license renewal applicant, in which Recio concurred. Ms. Davis replied that the status hearing would not be continued.

At the status hearing, Recio argued the motion for clarification and waiver. The Board focused on Recio's e-mail exchange with Ms. Davis in which she stated that he "needed to bring the five individuals to the status hearing." The Board ruled that it was unambiguous that petitioners had notice that "four others will need to appear at the status hearing," not acknowledging Recio's argument that Ms. Davis's statements were "not the same as a Board order."

Recio moved that the status conference be rescheduled. Neil Glick, ANC Commissioner for ANC 6B–08, joined in the request for rescheduling. Commissioner Glick stated that "this is the neighbor's first protest ... he's not as experienced with [the Board's] process." The Board

voted to dismiss the protest, and did not reschedule the hearing.

In the Board's written order of February 8, 2012, dismissing the protest, it cited the letter of December 1, 2011, to Recio from Sarah Fashbaugh of the Office of Adjudication, and noted that ABRA staff "repeatedly informed [petitioners] that at least four additional members of the Protestants' group had to appear at the Status Hearing." According to the Board, "[a]s a matter of policy, the Board has consistently required Groups of Five or More Individuals to have at least five members appear before the Board [at the status hearing] under § 1605.4."[3] The Board rejected petitioners' argument that 23 DCMR §§ 1602.2, 1603.3 and 1706.5 (2008) apply generally to protestants and allow a person to "attend the roll call hearing ... through a designated representative."[4] According to the Board, these general provisions do not override 23 DCMR § 1605.4, "which was written to apply specifically to Groups of Five or More Individuals" and grants the Board the power to demand that five or more of them personally appear during at least one hearing. The Board also stated that it is not arbitrary to require the appearance of five individuals because, *inter alia,* it "discourages fraudulent protests ... and saves administrative resources." The Board reasoned that its policy did not violate the DCAPA because the DCAPA "does not relieve the Protestants of the burden of proving that they have standing."

## II.

Petitioners argue that the Board erred in dismissing the protest because the DCAPA "provides for the right of a person to appear or present his or her case by counsel." D.C.Code § 2–509(b) (2001) states: "Every party shall have the right to present in person or by counsel his case or defense by oral and documentary evidence...." Thus, petitioners argue, the Board "lacked the power to adopt a regulation or interpret a regulation in derogation of the D.C. APA and the right of persons to appear through counsel."

Petitioners also argue that the Board's decision is contrary to its own regulations that allow individual protestants to appear through counsel. They cite the same regulations that Recio cited to the Board to make that point.[5] According to petition-

---

3. 23 DCMR § 1605.4 states: "The Board may require protestants to appear before the Board for the purpose of determining that a sufficient number of individuals exist to have standing pursuant to D.C. Official Code § 25–601."

 D.C.Code § 25–601(2) (2012 Supp.) states that the following persons may protest the issuance or renewal of a license: "A group of no fewer than 5 residents or property owners of the District sharing common grounds for their protest...."

4. 23 DCMR § 1602.2 states: "Each applicant, and each person submitting a protest shall attend the roll call hearing in person or appear through a designated representative."

 23 DCMR § 1603.3 states: "Failure to appear in person or through a designated representative [at a status hearing] may result in

denial of the license application or dismissal of a protest, unless, in the discretion of the Board, good cause is shown for the failure to appear. A request for reinstatement with the Board must be filed within ten (10) days of dismissal or denial date."

 23 DCMR § 1706.5 states: "Any party appearing or having the right to appear before the Board in any proceeding shall have the right to representation by an attorney or designated representative of his or her choice. Any party appearing before the Board in any proceeding may also bring an interpreter of his or her choice."

5. Respondent cites 23 DCMR §§ 1602.2, 1602.3 and 1706.5, all of which are set forth in note 3 *supra.*

ers, it is clear that 23 DCMR § 1605.4 addresses solely the requirement to appear, "but does not address whether the protestants can appear by counsel." Thus, petitioners argue, the Board cannot require that protestants appear in person.

Petitioners advance the separate argument that the Board applied an unpublished rule of practice to bar a statutory right, thereby violating basic principles of the DCAPA and due process. According to petitioners, this policy affects substantive rights and thus the Board was required to promulgate a formal rule. Petitioners further argue that the Board's informal rule is unreasonable and violates public policy. According to petitioners, the Board's decision is "contrary to the general principle that procedural rules be interpreted in favor of reasonable adjudications on the merits." Petitioners contend that a Board member's statement at the status hearing that "a minimum number of [ ] people must show up so that we know that they exist" was without warrant because all of the protesting neighbors "signed a written statement specifically joining the protest letter and authorizing [petitioners] to represent them."

Finally, petitioners argue that that the Board abused its discretion by using the procedure it did to consider petitioners' motions, that is, the Board denied petitioners' motion to waive the individual appearance of the protestants other than Recio, at the same time denied petitioners' motion to continue the status hearing, and immediately voted to dismiss the protest. Petitioners argue that as protestants they were denied their right to be heard at a merits hearing on the Market's application for liquor-license renewal.[6]

The Board's brief mirrors its final order. It counters that its interpretation of the statutes and regulations to the effect that five individual protestants must appear in person at a hearing is reasonable because it corresponds with the regulatory language that the Board "may require protestants to appear before the Board for the purpose of determining that a sufficient number of individuals exist to have standing" and because it serves the purpose of the statute by assisting the Board in determining whether there is common ground for a protest. The Board also argues that its interpretation is not an informal rule but a reasonable interpretation of an existing rule; that the regulatory provisions cited by petitioners to establish that each of them could appear through counsel are not applicable because they assume a person already has standing while a protestant without standing is not a "party"; that its interpretation is consistent with the DCAPA because the determination of standing is a threshold issue that precedes "a party's case or defense"; and that the Board's interpretation "imposes a sensible procedural requirement." Finally, the Board argues that it did not abuse its discretion in declining to waive its regulation because it had given the petitioners several warnings that failure of at least five protestants to appear in person at the status hearing "could result" in the dismissal of their protest.

### III.

We address preliminarily an issue not raised in the briefs or at oral argument. In a filing after oral argument under D.C. Appellate Rule 28(k), the Office of the Attorney General, acting as counsel for the Board, advised this court that on February 11, 2013, the D.C. Council enacted the

---

**6.** The Board approved the Market's liquor-license renewal on March 7, 2012, after the Market and ANC–6B entered into a voluntary agreement and ANC–6B withdrew its protest.

Omnibus Alcoholic Beverage Regulation Amendment Act of 2012 ("the Act").[7] *See* 60 D.C. Reg. 3410 (Mar. 15, 2013). The Act amends D.C.Code § 25–609 by adding the following language:

> In the event that an affected ANC submits a settlement agreement to the Board on a protested license application, the Board, upon its approval of the settlement agreement, shall dismiss any protest of a group of no fewer than 5 residents or property owners meeting the requirements of § 25–601(2).

Act 19–678(w). The Rule 28(k) letter points out that, as noted above,[8] the Board had approved a voluntary agreement between the Market and ANC–6B and had also approved the renewal of the Market's license.

The Attorney General's letter not only summarizes the legislation, but briefly argues that because of the legislation there is no point in the court's reversing the Board and remanding the case, because any remand would be futile—the Board would have to dismiss the protest. Petitioners responded with a Memorandum Regarding Supplemental Authority in which they argue that the statute is not retroactive and has no effect on this case. The Office of the Attorney General did not reply to the Memorandum.

 We hold that the Act does not apply retroactively, and thus does not control the motion before us here. As a general rule, "statutes are to be construed as having only a prospective operation, unless there is a clear legislative showing that they are to be given a retroactive or retrospective effect." *Bank of Am., N.A. v. Griffin,* 2 A.3d 1070, 1074 (D.C.2010) (internal quotation marks and citation omitted). The Council did not state what, if

any, effect it intended the Act to have on claims that were pending upon its effective date. In similar circumstances, this court has found that without an "unequivocal statement of the Council's intent," the new law will not apply retroactively. *Nixon v. District of Columbia Dep't of Emp't Servs.,* 954 A.2d 1016, 1023 (D.C.2008); *see also Mayo v. District of Columbia Dep't of Emp't Servs.,* 738 A.2d 807, 811 (D.C.1999) (declining to apply retroactively a statute that does not expressly address the issue of retroactivity).

Regarding the question of whether particular legislation is to be considered retroactive, we stated in *Lacek v. Washington Hospital Center Corporation,* 978 A.2d 1194, 1197 (D.C.2009):

> [A]lthough there is a "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence," *Landgraf v. USI Film Prods.,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.E.2d 229 (1994), new legislation is truly retroactive only if it "changes the legal consequences of acts completed before its effective date." *Id.,* 511 U.S. at 269 n. 23, 114 S.Ct. 1483 (citation and internal quotation marks omitted). Thus, there is a presumption that legislation that affects substantive rights will operate only prospectively. *Id.*

In this case, the agreement between the ANC and the applicant was entered prior to the effective date of the enactment. If the enactment were applied retroactively with respect to the agreement, that would have the effect of altering, indeed eliminating, petitioners' substantive right to protest. Thus, we hold that, even on remand, the Board cannot apply the Act retroactively to dismiss Recio's protest based on

---

7. The act became effective on May 1, 2013.

8. See *supra* note 5.

an agreement that preceded the enactment of the Act.[9]

## IV.

■■■ "Under the general limited review that we undertake of any agency decision, we must affirm unless we conclude that the agency's ruling was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Office of the People's Counsel v. Pub. Serv. Comm'n of the District of Columbia,* 955 A.2d 169, 173 (D.C.2008) (internal quotation marks and citation omitted). "However, where questions of law are concerned, we review the agency's rulings de novo because we are presumed to have the greater expertise when the agency's decision rests on a question of law, and we therefore remain the final authority on issues of statutory construction." *District of Columbia Office of Human Rights v. District of Columbia Dep't of Corr.,* 40 A.3d 917, 923 (D.C.2012) (internal quotation marks, brackets, and citations omitted). "[A]n agency's interpretation of its own regulations or of the statute which it administers is generally entitled to great deference from this court." *Takahashi v. District of Columbia Dep't of Human Servs.,* 952 A.2d 869, 874 (D.C.2008) (internal quotation marks and citations omitted). "However, we will not defer to the Board's interpretation if it is plainly wrong or inconsistent with the governing statute." *Mallof v. District of Columbia Alcoholic Beverage Control Bd.,* 43 A.3d 916, 918 (D.C.2012) (citation omitted).

## A.

■■■ Petitioners argue that pursuant to D.C.Code § 2–509(b) and 23 DCMR §§ 1602.2, 1603.3 and 1706.5 the presence of a designated representative of the required number of protestants is as a matter of law necessarily sufficient to meet the standing requirement under 23 DCMR § 1605.4. We cannot agree. The governing statute provides that "[a] group of no fewer than five residents or property owners of the District sharing common grounds for their protest" may protest the issuance or renewal of a liquor license before the Board. D.C.Code § 25–601(2) (2001). The Board's implementing regulation provides that "[t]he Board *may* require protestants to appear before the Board for the purpose of determining that a sufficient number of individuals exist to have standing pursuant to D.C. Official Code § 25–601." 23 DCMR § 1605.4 (emphasis added). The purpose of this regulation is to enable the Board to determine that a sufficient number of persons exists to gain standing. Thus, we cannot agree with petitioners that the statutory and regulatory scheme requires the Board to allow a designated individual to appear for some or all of the other members of a group of protestants that is seeking standing. *Cf. Coumaris v. District of Columbia Alcoholic Beverage Control Bd.,* 660 A.2d 896, 899 (D.C.1995) (courts "must defer to an agency's interpretation of the statute it administers, as long as that interpretation is reasonable and not plainly wrong or inconsistent with its legislative purpose" (internal quotation marks and citation omitted)).

## B.

■■■ Petitioners also argue that by "consistently" requiring five or more individuals to appear in person as a matter of

---

9. We also address, preliminarily, the issue of jurisdiction. We conclude that we have jurisdiction over the petition as the Board's order states that "any party adversely affected has the right to appeal this Order by filing a petition for review ... with the District of Columbia Court of Appeals."

policy, the Board has effectively created a substantive rule in violation of the notice-and-comment requirements of the DCAPA. Again, we disagree. The DCAPA provides that an "agency shall, prior to the adoption of any rule or the amendment or repeal thereof, publish in the District of Columbia Register ... notice of the intended action so as to afford interested persons opportunity to submit data and views either orally or in writing." D.C.Code § 2–505(a) (2011).

The DCAPA is stricter than the comparable section of the Federal Administrative Procedure Act ("APA"), which does not require notice or a hearing for "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C.A. § 553(b)(3)(A) (2012). However, we have held under the DCAPA "that when an agency rule merely describes the effect of an existing statute, rule or regulation, it does not fall within the DCAPA definition of rule and the procedural formalities of the [DC]APA are unnecessary. Such a rule is referred to as an interpretive' [or interpretative] rule." *Andrews v. District of Columbia Police & Firefighters Ret. & Relief Bd.*, 991 A.2d 763, 770 (D.C.2010) (internal quotation marks, brackets, and citations omitted). By contrast, substantive rules "are not mere interpretations of a statute's or regulation's meaning, but are self-imposed controls over the manner and circumstances in which the agency will exercise its plenary power." *Id.* at 771 (internal quotation marks and citation omitted).

■ We conclude that the Board's policy of requiring the physical appearance of at least five protestants is an interpretive rule that does not require notice and comment. First, the Board's policy is directly related to 23 DCMR § 1605.4, which states that "[t]he Board *may* require protestants to appear before the Board for the purpose of determining that a sufficient number of individuals exist to have standing pursuant to D.C. Official Code § 25–601." (emphasis added). Interpretive rules are those that "derive a proposition from an existing document whose meaning compels or logically justifies the proposition." *Central Tex. Tel. Co–op., Inc. v. F.C.C.*, 365 U.S.App. D.C. 247, 254, 402 F.3d 205, 212 (2005). In contrast, we have found that an agency's policy is a substantive rule that requires notice and comment where neither the D.C. Code nor its implementing regulations contain language related to the policy. *See Andrews, supra*, 991 A.2d at 768, 772 (holding that the Board could not apply a claim-filing deadline to bar petitioner's claim where neither the D.C. Code nor its implementing regulations contained a provision establishing a deadline).

Second, the Board's policy relates to a matter of internal agency procedure. *See Wanzer v. District of Columbia*, 580 A.2d 127, 133 (D.C.1990) ("Agency protocols and procedures, like agency manuals, do not have the force or effect of a statute or an administrative regulation. Rather, they provide officials with guidance on how they should perform those duties which are mandated by statute or regulation." (citations omitted)). Under the federal APA, affording notice and a hearing is not required to promulgate rules of agency procedure or practice. 5 U.S.C.A. § 553(b)(3)(A). Similarly, this court has found that matters related to internal agency procedure do not generally require notice and comment. *See Washington Hosp. Ctr. v. District of Columbia Dep't of Emp't Servs.*, 743 A.2d 1208, 1212 (D.C. 1999) (upholding an agency rule adopted in an adjudication that "represents a procedural clarification that is consistent with the statutory thirty day filing requirement set forth in [D.C.Code] § 36–322(b)(2)").

Finally, the Board's reference to a consistent practice notwithstanding, it retains the authority to permit a good-cause waiver of the requirement for individual appearance. The Board's regulations provide that "[t]he Board may, for good cause shown and in the interest of justice or to prevent hardship, waive any provision of this chapter which is not required by the Act in any proceeding after duly advising the parties of its intention to do so." 23 DCMR § 1600.2 (2008). Providing for a good-cause waiver allows the Board a measure of discretion in determining whether to permit a protest to move forward without individual appearance in order to avoid a grave injustice. *See, e.g., Cocome v. District of Columbia Lottery & Charitable Games Control Bd.,* 560 A.2d 547, 551 (D.C.1989) (affirming the Office of Employee Appeals' conclusion that there was good cause to waive the time requirement for appealing because "the Lottery Board affirmatively misinformed appellant as to his rights, and because appellant appealed to OEA as soon as he discovered those rights"). Where the Board is free to exercise discretion and consider the individual facts in various cases, there has been no rulemaking.[10] *See District of Columbia v. Craig,* 930 A.2d 946, 969 (D.C. 2007) (where the Office of Tax and Revenue was left free to exercise discretion to follow or not to follow the results of the trending methodology in individual cases, "the trending methodology was not a rule").

These three considerations—that the Board's "policy" relates directly to a rule that "justifies the proposition," that the practice (policy) is a matter of internal agency procedure, and that the Board retains the authority to permit a good-cause waiver—taken as a whole, lead us to conclude that the Board's policy is an interpretive rule that does not require notice and comment.

## C.

Lastly, petitioners argue that the Board abused its discretion in denying the motion for waiver of the requirement that five protestants appear in person, and then, during the same hearing, denying the motion for a continuance and dismissing the protest. We agree that the manner in which the Board dealt with the request for waiver of the requirement and for continuance amounted to an abuse of discretion.

The Board's regulations specifically state that the Board may "for good cause shown and in the interest of justice or to prevent hardship, waive any provision of this chapter which is not required by the Act." 23 DCMR § 1600.2. Board Agent Laverne Fletcher told Recio at the roll-call hearing that he could file a petition for waiver of the requirement that at least five members of a protesting group must appear at a hearing. Petitioners filed a motion with the Board to clarify whether appearance through designated counsel was sufficient to comply with the rules, which, in substance was a motion for waiver of the requirement and was referred to at the status conference as such a motion by Recio and a member of the Board. *See, e.g., Nuyen v. Luna,* 884 A.2d 650, 654 (D.C.2005) ("The nature of a motion does not turn on its caption or label, but rather its substance."); *Wallace v. Warehouse*

---

10. The Board made statements arguably suggesting that it had a flat policy, and it did not mention that good-cause waiver provision. Recio did not explicitly refer to the good-cause waiver provision, however, and the Board does not appear to have adopted the position that it would not under any circumstances grant a good-cause waiver of its policy.

*Emps. Union No. 730*, 482 A.2d 801, 804 (D.C.1984) ("The nature of a motion is determined by the relief sought, not by its label or caption."). In the circumstances of this case, the Board did not properly deal with the written motion for waiver by considering it and denying it at virtually the same time that it dismissed the protest.[11] Once the motion was denied, petitioners had no opportunity to comply with the requirement. This is at odds with this court's policy in favor of decisions on the merits. *See, e.g., Nichols v. First Union Nat'l Bank*, 905 A.2d 268, 271 (D.C.2006).

 "In reviewing an administrative denial of a motion for continuance ... we are guided by precedents from both agency and trial court settings." *King v. District of Columbia Water & Sewer Auth.*, 803 A.2d 966, 968 (D.C.2002). "[T]his court has recognized a strong policy interest in favor of decisions on the merits and against procedural defaults." *1303 Clifton St., LLC v. District of Columbia*, 39 A.3d 25, 32 (D.C.2012). "A request for a continuance is addressed to the sound discretion of an agency and will be set aside only for an abuse of discretion." *King, supra*, 803 A.2d at 968 (internal ellipsis omitted). "Factors relevant to determining whether the trial court or agency abused its discretion include the reasons for the request for continuance, the prejudice that would result from its denial, the parties diligence in seeking relief, any lack of good faith, and any prejudice to the opposing party." *Murphy v. A.A. Beiro Constr. Co.*, 679 A.2d 1039, 1043 (D.C.1996) (citations omitted). This court will reverse an agency's denial of a motion where "a continuance should be granted to avoid

material hardship and injustice." *Feaster v. Feaster*, 359 A.2d 272, 273 (D.C.1976) (internal quotation marks and citation omitted).

Our application of the *Murphy* factors to the present case leads us to conclude that the Board abused its discretion. Petitioners were unsure whether five protestants would be required, or could properly be required, to appear in person. Hence their motion for clarification. The Board considered the motion at the status hearing itself; therefore petitioners did not have adequate notice of whether the Board would ultimately require the presence of five protestants. Furthermore, "we have also held that ambiguity was compounded when employees of the administrative agency gave erroneous oral or written advice to the claimant." *Calhoun v. Wackenhut Servs.*, 904 A.2d 343, 346 (D.C.2006). Here, Ms. Fletcher advised Recio at the roll-call hearing that he could file a motion for waiver, and he sought that relief in the motion for clarification. Ms. Davis' e-mails to Recio alternated between the use of the word "must" or "may" when referring to whether the Board would dismiss the petition if five protestants did not appear in person. This added to the ambiguity. Thus, whether the Board would grant the motion for waiver or require that five protestants appear personally was uncertain.

Denial of the protest resulted in prejudice to petitioners. We have recognized that denying a group the opportunity to protest a liquor license may have "significant consequences for the quality of their lives." *Coumaris, supra*, 660 A.2d at 902. We are satisfied that petitioners diligently

11. At the hearing, the Board did not formally vote on petitioners' motion for clarification. However, it stated that it would "wrap them together" and address the motion to clarify as it addressed the motion to dismiss. Additionally, the Board did not address appellant's request for a continuance at the hearing. The Board denied the request later in its written order.

attempted to obtain relief, and their failure to have four other protestants present at the status hearing appears not to have been in bad faith. We hold that, in the circumstances of this case, the Board abused its discretion in denying petitioners' motion for waiver, and denying their motion for a continuance and voting to dismiss the protest, all in the course of a single proceeding. Thus the Board's order dismissing the protest must be reversed.

For the foregoing reasons the Board's order is

*Reversed and the case is remanded for further proceedings consistent with this opinion.*